# THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------

BEATRIZ VEERMAN AND KHADIJETOU
("KADIA") BA,

Plaintiffs,

- against –

DEEP BLUE GROUP LLC, OPIA,
FREDERICK LESORT AND ANTOINE
BLECH (a/k/a Antoine Bleck)

Defendants.

------------------------------------------------------------------x

Index No. 08 CV 5042

Hon. William H. Pauley III


## BRIEF IN SUPPORT OF DEFENDANTS' MOTION

## FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF

## CIVIL PROCEDURE 56(c)


LEONARD ZACK & ASSOCIATES
Leonard Zack (LZ8144)
110 E. 55th Street, 14th Floor
New York, NY 10022
(212) 754-4050 tel.
(212) 759-8890 fax.
Counsel for Defendants Deep Blue Group LLC,
Frederic Lesort and Antoine Blech

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES .................................................................... ii

I.   PROCEDURAL HISTORY........................................................ .....1

II.  FACTUAL BACKGROUND ...................................................... .....1

III. LEGAL ARGUMENT...................................................................3

    1.   Standard for Summary  Judgment........ ........................................... 3

    2.   Plaintiffs Counts One through Four are Evaluated under Identical

        Standards....................................................................................... 3

    3.   Plaintiffs were not Discriminated Against in Any Manner........................... 4

        a.   There is no Evidence of Disparate Treatment ...................................... 4

        b.   Termination was Not Discriminatory.............................................. 6

    4.   Plaintiffs' Claims of Sexual Harassment Fail as a Matter of Law ................. 8

        a.   Defendants did Not Participate in Any Unwelcome Conduct.............. 9

        b.   Alleged Harassment did Not Affect Any Terms, Conditions,

            or Privileges of Employment..................................................... 10

        c.   Plaintiffs Fail to Provide Any Evidence of *Quid Pro Quo*

            Sexual Harassment.................................................................. 11

    5.   Termination was not Retaliatory....................................................... 12

    6.   Defendants' did Not Violate Labor Laws as No Unauthorized

        Monies were Deducted from Employees Pay............................................ 14

V.   CONCLUSION................................................................................15

## TABLE OF AUTHORITIES

PAGE

## CASES

Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 26 L. Ed. 2d 142,
90 S. Ct. 1598 (1970)......................................................................... 3

Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 752, 141 L. Ed. 2d 633,
118 S. Ct. 2257 (1998)...................................................................... 8

Carrero v. New York City Hous. Auth., 890 F.2d 569, 577 (2d Cir. 1989)................... 10

Castro v. N.Y. City Board of Educ. Personnel Director, 96 Civ. 6314 (MBM),
1998 U.S. Dist. LEXI 2863, 1998 WL 108004 (S.D.N.Y. 1998)............................ 13

CBOCS West, Inc. v. Humphries, 128 S. Ct. 1951, 1960 (2008)........................... 4

Collins v. New York City Transp. Auth., 305 F.3d 113, 118 (2d Cir. 2002)................. 12

Farage v. Johnson-McClean Techs., 2002 U.S. Dist. LEXIS 9471, 17, 28
Employee Benefits Cas. (BNA) 1973 (S.D.N.Y. 2002)...................................... 4

Faragher v. Boca Raton, 524 U.S. 775, 786, 141 L. Ed. 2d 662,
118 S. Ct. 2275 (1998)(quoting Meritor Savings Bank, FSB v. Vinson,
477 U.S. 57, 67, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986))................................... 8, 10

Faragher at 787-788 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 23,
126 L. Ed. 2d 295, 114 S. Ct. 367 (1993))................................................. 9

Feliciano v. Alpha Sector, Inc. 2002 U.S. Dist. LEXIS 12631,
2002 WL 1492139, at 8 (S.D.N.Y. 2002)................................................... 11

Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002) (quoting Anderson
v. Liberty Lobby, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)).......... 3

Gregg v. New York State Dep't of Taxation & Fin., 1999 U.S. Dist. LEXIS 5415
(S.D.N.Y. 1999)............................................................................. 11

Hamilton v. Bally of Switz., 2005 U.S. Dist. LEXIS 9319 (S.D.N.Y. 2005)................. 11

Higueros v. New York State Catholic Health Plan, 526 F. Supp. 2d 342,
345-346 (E.D.N.Y.) (citing Lambert v. Genesee Hosp., 10 F.3d 46, 55

ii

(2d Cir. 1993))................................................................................... 15

Karibian v. Columbia Univ., 14 F.3d 773, 777 (2d Cir. 1994)............................................ 11

Leopold v. Baccarat, Inc., 174 F.3d 261, 264 (2d Cir. 1999).................................... 4

Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1189 (2d Cir. 1987) ............................ 10

McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1994)................................... 4

Moran v. Fashion Institute of Technology, 2002 U.S. Dist. LEXIS 19387,
2002 WL 31288272 (S.D.N.Y. 2002)............................................................. 11

Niagra Mohawk Power Corp. v. Jones Chem., Inc. 315 F.3d 171,
175 (2d Cir. 2003). ................................................................................3

Perez v. Consol. Edison Order Corp., 2008 U.S. Dist. LEXIS 19032,
2002 WL 31255115 (S.D.N.Y. 2002)...............................................................12

Ramseur v. Chase Manhattan Bank, 865 F.2d 460, 463 (2d Cir. 1989)........................ 4

Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996)............................ 12

Ricci v. DeStefano, 129 S. Ct. 2658, 2672 (2008) (quoting Watson
v. Fort Worth Bank & Trust, 487 U.S. 977, 985-986,
108 S. Ct. 2777, 101 L. Ed. 2d 827 (1988))..................................................... 4

Santucci v. Veneman, 01 Civ. 6644 (CBM), 2002 U.S. Dist. LEXIS 19032,
2002 WL 31255115 (S.D.N.Y. 2002)............................................................... 13

Scotto v. Alemas, 143 F.3d 105, 114 (2d Cir. 1998)............................................ 3

Simpson v. New York State Dep't of Civil Servs., 166 Fed. Appx. 499,
502 (2d Cir. 2006)................................................................................ 14

Swentek v. USAir, Inc., 830 F.2d 552, 557 (4th Cir. 1987).................................... 9

Terry v. Aschroft, 336 F.3d 128, 138 (2d. Cir. 2003)........................................... 5

Trotta v. Mobil Oil Corp., 788 F. Supp. 1336, 1348 (S.D.N.Y. 1992)......................... 9

Zacharowicz v. Nassau Health Care Corp., 177 Fed. Appx. 152,
2006 U.S. App. LEXIS 10378, 4-5 (2d Cir. 2006)................................................. 6,7

Defendants, Deep Blue Group LLC, Opia, Frederic Lesort, and Atoine Blech (a/k/a Antoine Bleck) ("Defendants"), by and through their attorneys, Leonard Zack & Associates, respectfully submit this Brief in Support of Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c).

## PROCEDURAL HISTORY

On June 2, 2008, Plaintiffs filed a Complaint (Doc. No. 1), which purports to set forth six causes of action against Defendants:

Count I: Title VII

Count II: 42 U.S.C. § 1981

Count III: N.Y. State Human Rights Law, N.Y. Exec. L. § 290 et seq.

Count IV: N.Y. City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq.

Count V: N.Y. Labor Law

Count VI: Fair Labor Standards Act

Defendants' Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c) is timely filed, as Hon. William H. Pauley III, set a motion deadline of November 4, 2009.

## FACTUAL BACKGROUND

Plaintiffs Beatriz Veerman and Khadijetou Ba were employed as servers at Opia, a restaurant/lounge operated by Defendants Deep Blue Group, LLC. Individual defendants Frederic Lesort and Antoine Blech were at all times relevant hereto co-owners of defendant Deep Blue Group, LLC. (Complaint annexed hereto as Exhibit "A," ¶¶ 2-5, 9). Plaintiffs allege discrimination based upon sex, race, color and national origin, as well as unlawful retaliation. (Complaint ¶ 67). Plaintiff Veerman alleges that Defendant Lesort sexually harassed her.

1

(Complaint ¶¶ 18-21). Plaintiff Ba alleges that Defendant Blech sexually harassed her. (Complaint ¶¶ 28-35). Plaintiffs also allege that Defendants unlawfully deducted money from wages and unlawfully appropriated their gratuities.

Ms. Veerman was employed at Opia from March 2005 to May 2007 (Veerman Aff. ¶3). Ms. Ba worked at Opia from Novermber of 2005 to March 2007. (Ba Aff. ¶ 3). Defendants worked at Opia full time as owners/ managers. Plaintiffs both worked at Opia while attending school. (Ba and Veerman Dep.) On average, Defendants and Plaintiffs would see each other at Opia two to three days a week. Id. Affidavits of other servers assert that they witnessed or were aware of Plaintiffs complaints of sexual harassment and discrimination. However, affidavits of Opia managers and investigator reports annexed hereto as Exhibit "B" reveal that no manager was aware of any sexual harassment or discrimination complaints against Defendants, nor did they witness Defendants commit acts of sexual harassment or discrimination. (See Luciano Aff.; Pereyra Aff.; Alessio letters). Neither Defendant was aware of any complaints of sexual harassment or discrimination by Plaintiffs or any other employees (Lesort Dep. pp. 35-36; Blech Dep. p. 93).

Defendants never terminated nor instructed any managers to terminate either Plaintiff. Both Plaintiffs abandoned their positions at Opia and were thereby removed from the schedule. Pereyra Aff.). Affidavit, annexed hereto as Exhibit "C," of John Liegey, who was in a relationship with Ms. Veerman, asserts that she openly discussed suing Opia after she left working there in an effort to extort money from Defendants. (Liegey Aff. ¶ 19-20).

# LEGAL ARGUMENT

### 1.  Standard for Summary Judgment

Summary judgment is permissible "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine 'if the evidence is such that a jury could return a verdict for the nonmoving party.'" Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002) (quoting Anderson V. Liberty Lobby, 477 U.S. 242, 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)). A fact is material if it may affect the outcome of the suit under the governing law. Id.

In the instant case Defendants, the moving party, has the burden of demonstrating that no genuine issue of material fact exists. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970). To defeat this motion, Plaintiffs must raise a genuine issue of material fact, and in doing so, they "may not rely on conclusory allegations or unsubstantiated speculation." Scotto v. Alemas, 143 F.3d 105, 114 (2d Cir. 1998). In determining whether or not a genuine issue of material fact exists, the court must construe the evidence in a manner most favorable to Plaintiffs, the non-moving party, and draw all inferences in their favor. Niagra Mohawk Power Corp. v. Jones Chem., Inc. 315 F.3d 171, 175 (2d Cir. 2003).

### 2.  Plaintiffs Counts One through Four are Evaluated under Identical Standards.

The standards for analyzing claims brought under Title VII of the Civil Rights Act of 1964, New York State Human Rights Law, and New York City Human Rights Law, are

3

identical. See Farage v. Johnson-McClean Techs., 2002 U.S. Dist. LEXIS 9471, 17, 28

Employee Benefits Cas. (BNA) 1973 (S.D.N.Y. 2002); Leopold v. Baccarat, Inc., 174 F.3d 261,

264 (2d Cir. 1999). Similarly, though claims of unlawful discrimination and retaliation pursuant

to 42 U.S.C. § 1981 et seq. require separate, distinct, and independent remedy from those of

Title VII, the standard set forth by the Second Circuit for establishing a prima facie case under §

1981 is identical to that of Title VII. See CBOCS West, Inc. v. Humphries, 128 S. Ct. 1951,

1960 (2008); See also McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1994); Ramseur v.

Chase Manhattan Bank, 865 F.2d 460, 463 (2d Cir. 1989).

      Plaintiffs' count one alleges discrimination, harassment, and retaliation in violation of

Title VII. Count two alleges discrimination and retaliation in violation of 42 U.S.C. § 1981.

Count three alleges discrimination and retaliation in violation of N.Y.S. Human Rights Law.

Count four alleges discrimination, harassment, and retaliation in violation of N.Y.C Human

Rights Law. Since counts one, two, three, and four require application of the same standard, we

will refer to them collectively, while distinguishing Plaintiff's independent, factual allegations

pertinent to the statutes. Thus, Plaintiffs' counts one, two, three, and four amount to claims of

alleged discrimination based on race, sexual harassment, and unlawful termination due to

retaliation.

**3.     Plaintiffs were not Discriminated Against in Any Manner.**

      **A.  There is no Evidence of Disparate Treatment.**

     In making a claim of disparate treatment in violation of Title VII, a plaintiff must show

"'that the defendant had a discriminatory intent or motive' for taking a job-related action." Ricci

v. DeStefano, 129 S. Ct. 2658, 2672 (2008) (quoting Watson v. Fort Worth Bank & Trust, 487

4

U.S. 977, 985-986, 108 S. Ct. 2777, 101 L. Ed. 2d 827 (1988)). To establish a prima facie case under Title VII, a plaintiff must show that: (1) she is a member of a protected class; (2) she satisfactorily performed the duties of his position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. See Terry v. Aschroft, 336 F.3d 128, 138 (2d. Cir. 2003).

In the instant case Plaintiffs assert claims of discrimination based upon sex, race, color, and national origin. Neither plaintiff has provided any facts or alleged any circumstances that would give rise to the inference that they were discriminated against based upon sex or national origin. In fact, Plaintiff Veerman admits that she does not believe she was discriminated against based upon her national origin. (Veerman Dep. p. 206) (relevant excerpts of Plaintiffs' and Defendants' Depositions are annexed hereto as Exhibit "D"). Therefore, any claim of discrimination based upon sex or national origin must be dismissed.

In support of their claims of racial discrimination, Plaintiffs allege that they were assigned to worse shifts than the White servers at Opia. They also allege that Thadee, a manager at Opia, told them that Defendant, Frederick Lesort, said Plaintiffs were "too dark" to work on certain days of the week. However, a close look at the facts of the case proves these allegations to be nothing more than meritless claims and hearsay. Plaintiffs did not produce any affidavit or statement from Thadee verifying the alleged statement. Moreover, in their depositions, both Plaintiffs admit that Frederick and Antoine did not oversee scheduling assignments. They also acknowledge that Jimena, a manager, was in charge of creating the weekly schedules. Plaintiffs approached managers with complaints or concerns regarding the schedules, and they were accommodated on multiple occasions. (See Alessio letters; Pereyra Aff. ¶ 7; Tasu Aff. ¶ 7).

5

Furthermore, Plaintiffs frequently worked or were scheduled to work the "best" days of the week at Opia. Defendants have provided all work schedules that could be obtained from Opia. The schedules, annexed hereto as Exhibit "E," cover the majority of 2006 and first half of 2007. The schedules show Plaintiffs worked at least one of the two "best days" each week. In fact, they were often scheduled to work both Wednesday and Thursday, the two "best days" at Opia. Plaintiffs schedules were as good as if not more favorable than lighter skinned servers. Plaintiffs solely assert their claims of discrimination based on conclusory allegations of disparate scheduling. However, they do not support these allegations with any factual documentation. Instead, they simply express that it is their opinion that the received less favorable schedules due to their races. Ms. Veerman even admitted that she received the "best shifts." (Veerman Dep. p. 286). Given the facts that Plaintiffs worked part-time as they had scheduling conflicts with school, that a majority of their scheduling requests were accommodated, that they worked a majority of the "best" days in all produced schedules, and their complaint of discrimination is based on allegations of disparate scheduling, it must be concluded as a matter of law that Defendants did not discriminate against or allow for the discrimination of Plaintiffs in any manner.

**B. Termination was Not Discriminatory.**

To establish a prima facie case based on termination due to discrimination the plaintiff must show that (1) she belongs to a protected class; (2) she performed her duties satisfactorily; (3) she was terminated; and (4) the circumstances surrounding her termination give rise to an inference of discrimination on the basis of her membership in that class. See Zacharowicz v. Nassau Health Care Corp., 177 Fed. Appx. 152, 2006 U.S. App. LEXIS 10378, 4-5 (2d Cir. 2006). Once a plaintiff meets her burden, the burden of production shifts to the employer to

6

provide a legitimate, nondiscriminatory reason for the termination. See Id. The employer is entitled to summary judgment upon providing a nondiscriminatory reason unless the plaintiff can produce evidence that reasonably supports a finding that the employer participated in prohibited discrimination. See Id.

Plaintiffs have not established a prima facie case of termination due to discrimination. Not only did Plaintiffs not perform their duties satisfactorily, but also the circumstances do not give rise to an inference of discrimination. Ms. Ba was not a good server, and Opia management even tried placing her as a hostess and coat check as she struggled with the responsibilities of a server. (Lesort Dep. pp. 75, 78) Of the five people that interviewed with Ms. Ba for the position at Opia, Ms. Ba was the only of African descent and the only one who was hired. (Ba Dep. p.52). In fact Opia employed several people of color. This is not fitting with the discriminatory allegations made by Plaintiffs.

Ms. Ba exhibited poor work performance and attendance and was not terminated for any discriminatory reason. On March 17, 2007, Ms. Ba left work in the middle of her shift after an argument with a manager regarding a previous customer's unpaid bill. She did not return to work after this date and was thereby removed from the schedule. (Pereyra Aff. ¶ 10-11). Ms. Ba was removed from the schedule solely in response to her abandonment of the job in mid-shift and failure to return to work at Opia. In light of Defendants' true and non-discriminatory reason for termination, Ms. Ba has not provided any evidence that reasonably supports a claim of termination or any adverse employment action due to discrimination. An inference of discrimination from these bald assertions would be unreasonable and cannot be made. Therefore, summary judgment must be granted in favor of Defendants.

Though Ms. Veerman was a better than average server, she also exhibited performance and attendance issues. On multiple occasions, she altered credit card tips to obtain more money than customers actually left as gratuity. (Lesort Dep. pp. 84-85). On May 13, 2007, Ms. Veerman did not show up to work on a day she was scheduled to. Management suspended her for a week, and she was placed back on the schedule the next week. However, she never showed up to work the following week and was thereby removed from the schedule. (Pereyra Aff. 12-13). Defendant, Mr. Blech, even called Ms. Veerman in hopes that she would return to Opia after she left. (Veerman Dep. p. 31). Ms. Veerman's failure to show up to work on multiple occasions was the sole reason for her termination. In light of Defendants' true and non-discriminatory reason for termination, Ms. Veerman has not provided any evidence that reasonably supports a claim of termination or any adverse employment action due to discrimination. An inference of discrimination from these bald assertions would be unreasonable and cannot be made. Therefore, summary judgment must be granted in favor of Defendants.


4.    **Plaintiffs' Claims of Sexual Harassment Fail as a Matter of Law**

For sexual harassment to be actionable under Title VII it must be "so severe or pervasive as to alter the conditions of employment and create an abusive working environment.'" <u>Faragher v. Boca Raton</u>, 524 U.S. 775, 786, 141 L. Ed. 2d 662, 118 S. Ct. 2275 (1998)(quoting <u>Meritor Savings Bank, FSB v. Vinson</u>, 477 U.S. 57, 67, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986)). Moreover, only harassing conduct that is "severe or pervasive" can produce a "constructive alteration in the terms or conditions of employment." <u>Burlington Industries, Inc. v. Ellerth</u>, 524 U.S. 742, 752, 141 L. Ed. 2d 633, 118 S. Ct. 2257 (1998).

In determining whether a work environment is sufficiently hostile or abusive the Court must consider all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher at 787-788 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 23, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993)). Furthermore, the Court has established that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" Faragher at 788.

Many Circuits, including the Second have established "in order to prevail under a hostile work environment theory, an employee must show that:

> (1) the employee was a member of a protected class; (2) the employee was subjected to unwelcome harassment; (3) the harassment was prompted simply because of the employee's gender; (4) the charged harassment affected a term, condition or privilege of employment; and (5) the existence of respondeat superior liability." Trotta v. Mobil Oil Corp., 788 F. Supp. 1336, 1348 (S.D.N.Y. 1992).

## A. Defendants did Not Participate in Any Unwelcome Conduct.

A plaintiff must show that at some point she clearly made her co-workers and superiors aware that in the future such conduct would be considered "unwelcome." See Swentek v. USAir, Inc., 830 F.2d 552, 557 (4th Cir. 1987). Even in taking all of Plaintiffs' allegations as true, Plaintiffs do not assert that they made Defendants aware in any way that their conduct was unwelcome.

Though Plaintiff Veerman allegedly refused Mr. Lesort's invitation to join him for dinner or drinks, she never asserts to have told him the invitations were unwelcome. In fact, she accepted one of his invitations. (See Veerman Dep. p. 49).

Similarly, Plaintiff Ba does not assert that she informed Mr. Blech that his alleged advances were unwelcome. Mr. Blech maintains that they were welcome as he had voluntary sexual interactions with Ms. Ba on multiple occasions. (Blech Dep. p. 65-67). Ms. Ba also admits to having met with Mr. Blech after her leaving her position at Opia. Her continued relationship with Mr. Blech after leaving Opia is not fitting with her claim that Mr. Blech sexually harassed her.

B.       **Alleged Harassment did Not Affect Any Terms, Conditions, or Privileges of Employment.**

To affect any term, condition or privilege of employment, the conduct must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. See Vinson at 67. To be deemed "pervasive," the conduct complained of must be "continuous and concerted," and not merely episodic. See Carrero v. New York City Hous. Auth., 890 F.2d 569, 577 (2d Cir. 1989). Isolated acts or occasional episodes do not merit relief. See Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1189 (2d Cir. 1987) "The offensiveness of the individual actions complained of is also a factor to be considered in determining whether actions are pervasive." Carrero at 578. Whether the conduct in question violates Title VII is to be determined from the totality of the circumstances. See Vinson at 69.

Plaintiff Veerman alleges that Defendant Lesort sexually harassed her by inviting her out frequently, making sporadic comments, such as "Are you married? I want to make sure you are not yet married" and the kissing of her lips and touching of her breast on one occasion after a dinner they shared together at his home. (Complaint ¶¶ 19-21; Veerman Dep. p. 55-56).

Similar cases in this District have all resulted in summary judgment for Defendants. For example, a plaintiff alleging 10 to 15 inappropriate conversations, four instances of offensive touching, and repeated invitations to drinks and meals did not have a hostile work environment claim sufficient to survive summary judgment. See Gregg v. New York State Dep't of Taxation & Fin., 1999 U.S. Dist. LEXIS 5415 (S.D.N.Y. 1999). A plaintiff alleging sexual compliments, invitations to dates, attempted hug, a kiss, phone calls, and an expressed desire for sex, did not survive summary judgment. See Feliciano v. Alpha Sector, Inc. 2002 U.S. Dist. LEXIS 12631, 2002 WL 1492139, at 8 (S.D.N.Y. 2002). In another case, plaintiff presented evidence of casual touching, leering, and physical proximity and did not survive summary judgment. See Moran v. Fashion Institute of Technology, 2002 U.S. Dist. LEXIS 19387, 2002 WL 31288272 (S.D.N.Y. 2002). Additionally, summary judgment has been granted for an employer alleged to have invited an employee out on dates, complimented the employee's appearance, and touching her breast on one occasion. See Hamilton v. Bally of Switz., 2005 U.S. Dist. LEXIS 9319 (S.D.N.Y. 2005).

Even in taking the allegations in a light most favorable to Plaintiff Veerman, she cannot survive summary judgment on a hostile work environment claim as her allegations do not amount to being sufficiently severe or pervasive to alter the conditions of her employment as a matter of law.

### C.        Plaintiffs Fail to Provide Any Evidence of *Quid Pro Quo* Sexual Harassment.

"To establish a prima facie case of quid pro quo harassment, a plaintiff must present evidence that she was subject to unwelcome sexual conduct, and that her reaction to that conduct was then used as the basis for decisions affecting the compensation, terms, conditions or privileges of her employment." Karibian v. Columbia Univ., 14 F.3d 773, 777 (2d Cir. 1994).

Plaintiffs assert quid pro quo harassment in alleging that they were both terminated in response to rejecting sexual advances by Defendants. The only evidence they offer in support of this is an alleged temporal relationship between the refusals of sexual advances and their terminations. However, as previously discussed in this memorandum, Plaintiffs voluntarily failed to show up for work and were thereby removed from the schedule. Their failure to show up for work is the only reason for termination. Plaintiffs do not assert that any terms, conditions, or privileges of employment were made contingent on their submission to sexual advances. Given the lack of any evidence, which would support a reasonable inference of *quid pro quo* harassment, summary judgment must be granted.

**5.      Termination was not Retaliatory.**

To state a prima facie case of retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. ¶ 2000e et seq., a plaintiff must show: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. See Collins v. New York City Transp. Auth., 305 F.3d 113, 118 (2d Cir. 2002); Reed v. A.W. Lawrence & Co., 95 F.3d 1170, 1178 (2d Cir. 1996).

Plaintiffs have not established a prima facie case of retaliation as they have failed to show that they participated in any protected activity and that Defendants aware of Plaintiff's involvement in any protected activity. Employee internal reports to management as well as formal complaints to agencies such as the EEOC regarding discriminatory practices or harassment are common examples of protected activity under Title VII. See Perez v. Consol. Edison Order Corp., 2008 U.S. Dist. LEXIS 19032, 2002 WL 31255115 (S.D.N.Y. 2002). The

12

grievance must specifically mention discriminatory action under the statute. <u>See</u> <u>Santucci v.</u> <u>Veneman</u>, 01 Civ. 6644 (CBM), 2002 U.S. Dist. LEXIS 19032, 2002 WL 31255115 (S.D.N.Y. 2002).

Both Ms. Beerman and Ms. Ba indicate that they complained to each other and to other employees about Defendants' conduct. However, they do not present evidence of any complaints made to management or any person of authority, which provide specific allegations of discrimination or harassment. Any incidental disagreements they had with managers regarding conditions of employment are not protected activities under Title VII as ordinary grievances to management or other superiors are not a protected activity. <u>See</u> <u>Castro v. N.Y. City Board of</u> <u>Educ. Personnel Director</u>, 96 Civ. 6314 (MBM), 1998 U.S. Dist. LEXI 2863, 1998 WL 108004 (S.D.N.Y. 1998). Furthermore, Defendants were unaware of Plaintiffs involvement in any such activities (Lesort Dep. pp. 35-36; Blech Dep. p. 93).

Assuming arguendo that Plaintiffs participated in protected activity, they still fail to establish a prima facie case of retaliation as they cannot show a causal connection between any protected activity and their termination. Plaintiffs argue that there was no legitimate reason for termination and thus, it must have been in retaliation. This claim is without any supporting evidence and is strictly conclusory. Defendants have provided valid reasons for termination of both Plaintiffs. However, Plaintiffs have not met their burden of providing reasonable evidence that would support their allegations of retaliation.

On March 17, 2007, Ms. Ba left work in the middle of her shift after an argument with a manager regarding a previous customer's unpaid bill. She did not return to work after this date and was thereby removed from the schedule and terminated. (Pereyra Aff. ¶ 10) Her abandonment of the job in mid-shift was the sole reason for her eventual termination from Opia.

On May 13, 2007, Ms. Veerman did not show up to work on a day she was scheduled to. Management suspended her for a week, and she was placed back on the schedule the next week. However, she never showed up to work the following week and was thereby removed from the schedule. (Pereyra Aff ¶¶ 12-13). Ms. Veerman was eventually terminated solely for her failure to show up to work on multiple occasions. In light of Defendants' true and reasonable explanation for termination, neither Plaintiff has provided any evidence that reasonably supports a claim of termination due to retaliation. They simply allege temporal proximity between participation in a protected activity and termination. However, temporal proximity is insufficient to overcome an employer's legitimate reason for termination. See Simpson v. New York State Dep 't of Civil Servs., 166 Fed. Appx. 499, 502 (2d Cir. 2006). Therefore, summary judgment must be granted in favor of Defendants.

6.    **Defendants' did Not Violate Labor Laws as No Unauthorized Monies were Deducted from Employees Pay.**

Plaintiffs allege Defendants violated various New York State Labor laws, codes, and regulations as well as the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., in making unlawful deductions from Plaintiffs' wages and unlawfully appropriating tip money from their wages. (Complaint ¶ 97). However, they do not provide any factual basis for these conclusory allegations. Based on the record, the only deductions made from Plaintiffs' wages were for taxes and appropriations of gratuities. Clearly, deductions for taxes are not unlawful. Under N.Y. Labor L. § 196, employers may appropriate money from waiters' tips to busboys or other similar employees. Therefore, the appropriation of Plaintiffs' gratuities to Opia employees is not a

14

violation of New York Labor Law, and their counts V and VI  must be dismissed as a matter of law.

In Count V of the Complaint, Plaintiff Ba alleges that she was unlawfully discharged in violation of Labor Law § 215. However, she has provided no factual basis for this allegation. The Second Circuit has held that

> "A plaintiff's retaliation claim under 29 U.S.C.S. ¶ 215(a)(3) of the Fair Labor Standards Act will fail unless a plaintiff demonstrates that the retaliation was the result of a plaintiff filing a formal complaint, instituting a proceeding, or testifying in a proceeding. Thus, informal complaints to supervisors are not protected by ¶ 215(a)(3). The plain language of this provision limits the cause of action to retaliation for filing formal complaints, instituting a proceeding, or testifying, but does not encompass complaints made to a supervisor." Higueros v. New York State Catholic Health Plan, 526 F. Supp. 2d 342, 345-346 (E.D.N.Y.) (citing Lambert v. Genesee Hosp., 10 F.3d 46, 55 (2d Cir. 1993)).

Ms. Ba did not institute any sort of formal complaint or proceeding or testify in any proceeding in regard to Defendants' alleged violations of Labor Law. Therefore, Her claim under Labor Law § 215 must be dismissed.

## CONCLUSION

For the reasons set forth above, the Defendants respectfully request that this Court grant Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c) in its entirety and grant any such further relief the Court deems just and proper.

15

Dated: New York, New York
        November 2, 2009

Respectfully submitted,

LEONARD ZACK & ASSOCIATES

Leonard Zack (LZ8144)
110 E. 35th Street, 14th Floor
New York, NY 10022
(212) 754-4050 tel.
(212) 759-8890 fax.
Counsel for Defendants Deep Blue Group
LLC, Frederic Lesort, and Antoine Blech

16