UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------

BEATRIZ VEERMAN AND KHADIJETOU
("KADIA") BA,

                                        Plaintiffs,

                                                                    Index No. 08 CV 5042

        - against –

                                                                    Hon. Larry A. Burns

DEEP BLUE GROUP LLC, OPIA,
FREDERICK LESORT AND ANTOINE
BLECH (a/k/a Antoine Bleck)

                                        Defendants.
----------------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION PURSUANT TO FED. R. CIV. P. 50 and FED. R. CIV. P. 59


**HAVKINS ROSENFELD RITZERT
& VARRIALE, LLP**
1065 Avenue of the Americas, Suite 800
New York, New York 10018
(212) 488-1598
HRRV File No.: 11170-101
*Attorneys for Defendant Deep Blue Group, Inc.,
Frederick Lesort and Antoine Blech*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................ 1

THE JURY VERDICT ................................................................................................... 2

ARGUMENT ............................................................................................................... 2

1.  STANDARD OF REVIEW ON MOTION PURSUANT TO
    FED. R. CIV. P. 50(b) ......................................................................................... 2

2.  STANDARDS OF REVIEW APPLICABLE TO MOTION PURSUANT
    TO FED. R. CIV. P. 59 ........................................................................................ 3

3.  DAMAGES GENERALLY ...................................................................................... 3

4.  THE AWARD OF DAMAGES TO BA ON HER NEW YORK LABOR
    LAW §215 RETALIATION CLAIM IS UNSUPPORTED BY LAW ............................... 5

    a.  Plaintiff Ba Did not Establish a Prima Facie Case Under N.Y. Lab. Law §215 .......... 5

    b.  Plaintiff Ba's Punitive Damages Award does not Meet the *Gore* Standard ................ 8

5.  THE PUNITIVE AWARDS FOR SEXUAL HARASSMENT AWARDED
    TO VEERMAN AND BA ARE UNSUPPORTED BY LAW ........................................... 12

    a.  Availability Of Punitive Damages Generally Under Statutory Frameworks ............... 12

    b.  Standard of Proof for Punitive Damages ...................................................... 15

    c.  Plaintiffs Veerman and Ba's Punitive Damages Awards do not Meet the
        Reprehensibility *Gore* Standard nor the NYCHRL Malice standard ....................... 17

    d.  Plaintiffs Veerman and Ba's Punitive Damages Awards are Disparate to
        their Actual Harm ............................................................................... 20

    e.  Plaintiffs Veerman and Ba's Punitive Damages Excessive Considering
        Similar Cases .................................................................................... 23

CONCLUSION ........................................................................................................... 26

## TABLE OF AUTHORITIES

**Cases**

*Arlio v. Lively,*
474 F.3d 46 (2d Cir. 2007)................................................................................ 2

*Bick v. The City of New York,*
No. 95 Civ. 8781, 1998 U.S. Dist. LEXIS 5543 (S.D.N.Y. Apr. 21, 1998) ................................ 21

*Binder v.* Long Island Lighting Co.,
847 F. Supp.1007, rev'd on other grounds, 57 F.3d 193 (2d Cir. 1997)...................................... 25

*Bisignano v. Korff,*
No. 00 CIV. 5640, 2001 U.S. Dist. LEXIS 12529 (S.D.N.Y. Mar. 22, 2001) ............................ 17

*BMW of N. America v. Gore,*
517 U.S. 559 (1996)................................................................... 1, 4, 5, 8, 10, 17, 26

*Bridges v. Eastman Kodak Co.,*
822 F. Supp. 1020 (S.D.N.Y 1993)...................................................................... 16

*Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.,*
492 U.S. 257 (1989)...................................................................................... 4

*Buffalo Athletic Club v. New York State Division of Human Rights,*
249 A.D.2d 986, 672 N.Y.S.2d 210 (4th Dept 1998) ........................................................ 25

*Burlington Indus., Inc. v. Ellerth,*
524 U.S. 742 (1998)...................................................................................... 13

*Coffey v. Dobbs International Services, Inc.,*
170 F.3d 323 (2d Cir. 1999).......................................................................... 19, 23

*Cooper Indus. v. Leatherman Tool Group,*
532 U.S. 424 (U.S. 2001).................................................................................. 4

*Corr v. MTA Long Island Bus,*
1999 U.S. App. LEXIS 25058 (2d Cir. 1999) .............................................................. 13

*Cosmos Forms, Ltd., v. State Div. of Human Rights,*
150 A.D.2d 442, 541 N.Y.S.2d 50 (2d Dept 1989) ........................................................ 25

*Cross v. N.Y. City Transit Authority,*
417 F. 3d 241 (2d Cir. 2005)............................................................................ 5

*Cullen v. Nassau County Civil Serv. Comm'n,*
53 N.Y.2d 492, 442 N.Y.S.2d 470 (1981) ................................................................ 21

*DeWitt v. Lieberman,*
48 F. Supp. 2d 280 (S.D.N.Y 1999)........................................................................ 15

*DiStefano v. Long Island Rail Road Co.,*
No. 96 Civ. 5487, 1999 WL 1704784 (E.D.N.Y. Dec. 21, 1999) ................................ 21

*Dunson v. Tri-Maintenance & Contractors,* Inc.,
171 F. Supp. 2d 103 (E.D.N.Y. 2001) .................................................................... 14

*Eisenberg v. Reid,*
74 Fed. Appx. 110 (2d Cir. 2003) .......................................................................... 23

*Ellis v. HarperCollins Pub., Inc.,*
No. 99 CIV. 12123, 2000 U.S. Dist. LEXIS 8598 (S.D.N.Y. June 21, 2000)................................ 8

*Empbanque Capital Corp. v. White,*
158 A.D.2d 686, 551 N.Y.S.2d 957 (2d Dept 1990) .................................................. 26

*Ettinger v. State Univ. of N.Y. State Coll. Of Optometry,*
No. 95 Civ. 9893, 1998 U.S. Dist. LEXIS 2289 (S.D.N.Y. Feb.26, 1998) ...................... 25

*Exxon Shipping v. Baker,*
128 S. Ct. 2605 (2008).................................................................................. 4, 10

*Faragher v. City of Boca Raton,*
524 U.S. 775 (1998).......................................................................................... 13

*Farias v. Instructional Sys., Inc.*
259 F. 3d. 91 (2d Cir. 2001)............................................................................ 16, 24

*Fidelity & Guaranty Insurance Underwriters, Inc. v. Jasam Realty Corp.,*
540 F.3d 133 (2d Cir. 2008)................................................................................. 2

*Fowler v. New York Transit Auth.,*
96 Civ. 6796, 2001 WL 83228 (S.D.N.Y. Jan. 31, 2001)........................................ 11, 20, 21

*Gasperini v. Center for Humanities, Inc.,*
518 U.S. 415 (1996)...................................................................................... 23, 24

*Harsco Corp. v. Renner,*
475 F. 3d 1179 (10th Cir. 2007) .......................................................................... 24

*Higueros v. New York State Catholic Health Plan,*
No. 07 Civ. 0418 2009 U.S. Dist. LEXIS 57533 (E.D.N.Y. June 29, 2009)................................. 6

*Iannone v. Frederic R. Harris, Inc.*
941 F. Supp. 403 (S.D.N.Y. 1996) ...................................................................................... 17

*Ismail v. Cohen,*
899 F.2d 183 (2d Cir. 1990).............................................................................................. 4

*Jacques v. DiMarzio, Inc.,*
200 F. Supp. 2d 151 (E.D.N.Y. 2002) ................................................................................ 8

*Kadesh v. United Air Lines,*
No. 02 Civ. 9058, 2003 U.S. Dist. LEXIS 2548 (S.D.N.Y. Feb. 19, 2003) .............................. 13

*Kato v. Ishihara,*
239 F. Supp. 2d 359 (S.D.N.Y. 2002)................................................................................. 14

*Kolstad v. Am. Dental Ass'n,*
527 U.S. 526 (1999).......................................................................................................... 15

*Kreinik v. Showbran Photo, Inc.,*
No. 02 Civ 1172, 2003 U.S. Dist. LEXIS 18276 (S.D.N.Y. Oct. 10, 2003) ............................. 6

*Lamberson v. Six West Retail Acquisition, Inc.,*
122 F. Supp. 2d 502  (S.D.N.Y. 2000)................................................................................ 14

*Lee v. Edwards,*
101 F.3d 805 (2d Cir. 1996).............................................................................................. 4

*Lewis v. City of N.Y.,*
689 F. Supp.2d 417 (E.D.N.Y 2010) ................................................................................... 3

*Linn v. United Plant Guard Workers,*
383 U.S. 53 (1966)........................................................................................................ 3, 20

*Lu v. Jing Fong Restaurant, Inc.,*
No. 06 Civ. 2657, 2007 U.S. Dist. LEXIS 64832 (S.D.N.Y. Sept. 4, 2007) .......................... 6

*Luciano v. Olsten Corp.,*
110 F.3d 210 (2d Cir. 1997)............................................................................................. 15

*Mack v. Transport Workers Union of Amer.,*
No. 00 Civ. 9231, 2002 U.S. Dist. LEXIS 5627 (S.D.N.Y. March 29, 2002) ......................... 8

*Manhattan and Bronx Surface Transit Operating Authority v.*
*New York State Executive Department,*
220 A.D.2d 668, 632 N.Y.S.2d 642 (2nd Dept 1995) ................................................................ 25

*Manley v. AmBase Corp.,*
337 F.3d 237 (2d Cir. 2003) ...................................................................................................... 3

*McIntosh v. Irving Trust Co.,*
887 F. Supp. 662 (S.D.N.Y. 1995) ..................................................................................... 20, 21

*Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.,*
290 F.3d 98 (2d Cir. 2002) ........................................................................................................ 3

*Munafo v. Metropolitan Transp. Auth.,*
381 F.3d 99 (2d Cir. 2004) ........................................................................................................ 3

*New York State Dep't Correctional Servs. v.*
*State Div. of Human Rights,*
207 A.D.2d 585, 615 N.Y.S.2d 531 (3rd Dept 1994) ........................................................... 26

*Nicholls v. The Brookdale Univ. Hospital Med. Ctr.,*
03 CV 6233 2004 U.S. Dist. LEXIS 12816 (E.D.N.Y. July 9, 2004) ....................................... 7

*Pac. Mut. Life Ins. Co. v. Haslip,*
499 U.S. 1 (1991) ........................................................................................................... 3, 4, 17

*Patrowich v. Chemical Bank,*
63 N.Y.2d 541, 483 N.Y.S.2d 659 (1984) .............................................................................. 13

*Perez v. Jasper Trading, Inc.,*
No. 05 CV 1725, 2007 U.S. Dist. LEXIS 92375 (S.D.N.Y Dec. 17, 2007) ........................... 11

*Port Auth. Police Asian Jade Soc'y of N.Y. & N.J., Inc. v.*
*Port Auth. of N.Y. & N.J.,*
681 F. Supp.2d 456 (S.D.N.Y. 2010) ....................................................................................... 2

*Quality Care Inc. v. Rosa,*
194 A.D.2d 610, 599 N.Y.S.2d 65 (2d Dept 1993) ................................................................ 25

*Reiter v. Metropolitan Transportation Authority of New York,*
No. 01 Civ. 2762, 2003 U.S. Dist. LEXIS 17391 (S.D.N.Y. Sept. 30, 2003) ......................... 25

*Robinson v. Instructional Sys., Inc.*
80 F. Supp. 2d 203 (S.D.N.Y 2000) aff'd, 259 F. 3d 91 (2d Cir. 2001) .................................. 15

*Scala v. Moore McCormack Lines, Inc.*,
985 F. 2d 680 (2d Cir. 1993) ................................................................. 23

*Seever v. Carrols Corp.*,
528 F. Supp. 2d 159 (W.D.N.Y. 2007) ......................................................... 8

*Sines v. Serv. Corp. Int'l*,
03 Civ. 5465, 2006 U.S. Dist. LEXIS 82164 (S.D.N.Y. Nov. 8, 2006) ................... 11

*Smith v. Wade*,
461 U.S. 30 (1983) ........................................................................... 15

*Song v. Ives Labs., Inc.*,
957 F.2d 1041 (2d Cir. 1992) ................................................................. 2

*Sowemimo v. D.A.O.R. Sec., Inc.*,
43 F. Supp. 2d 477 (S.D.N.Y. 1999) ......................................................... 14

*Spiegel v. Schulmann*,
604 F.3d 72 (2d Cir. 2010) ................................................................. 13

*State Farm Mut. Automobile Ins. Co. v. Campbell*,
538 U.S. 408 (2003) ...................................................................... 9, 17

*Thomas v. iStar Fin., Inc.*
508 F. Supp. 2d 252 (S.D.N.Y 2007) ......................................................... 17

*Thoreson v. Penthouse International, Ltd.*,
80 N.Y.2d 490; 606 N.E.2d 1369 (1992) reconsid. denied,
81 N.Y.2d 835, 611 N.E.2d 298 (1993) ....................................................... 16

*Ting Yao Lin v. Hayashi Ya II, Inc.*,
2009 U.S. Dist. LEXIS 12963, 24-29 (S.D.N.Y. Jan. 30, 2009) ............................. 11

*Tolbert v. Queens Coll.*,
242 F.3d 58 (2d Cir. 2001) ................................................................. 15

*Tomka v. Seiler Corp.*,
66 F.3d 1295 (2d Cir. 1995) ............................................................. 13, 14

*Trademark Research Corp. v. Maxwell Online, Inc.*,
995 F.2d 326 (2d Cir. 1993) ................................................................. 5

*Vasbinder v. Scott*,
976 F.2d 118 (2d Cir. 1992) ................................................................. 17

*Weissman v. Dawn Joy Fashions, Inc.,*
214 F. 3d 224 (2d Cir. 2000)........................................................................... 24

*Zakre v. Norddeutsche Landesank Girozentrale,*
541 F. Supp. 2d 555 (S.D.N.Y. 2008) ................................................................ 5

**<u>Statutes</u>**

42 U.S.C. § 1981 .......................................................................................... 16

42 U.S.C. § 2000e ..................................................... 10, 12, 13, 15, 16, 24, 25

N.Y. C.P.L.R §5501(c) .................................................................................. 30

N.Y. Exec. Law. § 290 .................................................................................. 16

N.Y. Exec. Law § 296 .................................................................................. 17

N.Y. Exec. Law 296 §(1) .............................................................................. 17

N.Y. Exec. Law §296(6) ............................................................................... 19

N.Y. Lab. Law §215 ..................................................... 1, 2, 6, 7, 13, 33

## PRELIMINARY STATEMENT

Defendants Deep Blue Group, LLC, Frederick Lesort ("Lesort"), and Antoine Blech ("Blech") (hereinafter referred to as "Defendants") by their attorneys, Havkins Rosenfeld Ritzert & Varriale, LLP, respectfully submit this Memorandum of Law and the accompanying affirmation of Linda Fridegotto, dated July 21, 2010, in support of their motion for:

1) Judgment setting aside plaintiff Ba's Labor Law retaliation claim as against the weight of the evidence;

2) Judgment setting aside plaintiff Ba's Labor Law punitive damage award;

3) a reduction of plaintiff Ba's punitive damage award to $3,000 or remittitur;

4) Judgment setting aside plaintiff Ba and Veerman's punitive damages awards for sexual harassment;

5) a reduction of plaintiffs' punitive damage awards for sexual harassment or remittitur.

It is respectfully submitted Plaintiff Ba failed to establish a prima facie case for retaliation based on the New York Labor Law §215 and her punitive award was grossly excessive, unsupported in law and disproportionate, particularly in light of the fact that the jury did not award her any compensatory damages. It is further submitted that plaintiff Veerman failed to meet the requisite standards for an award of compensatory damages under the NYSHRL and NYCHRL and therefore that award should be vacated or in the alternative, reduced or remitted, as should its corresponding punitive damages for her sexual harassment/retaliation based on sex claims. Plaintiff Ba's award for punitive damages should be vacated in its entirety on the basis that the jury did not award her any compensatory damages, making the punitive damages award untenable. Alternatively, both punitive damage awards should be reduced or remitted on the basis that they do not conform with the requirements set forth by the Supreme Court in *Gore*.

## THE JURY VERDICT

On June 16, 2010 the jury awarded plaintiff Ba $3,000 in lost wages and $24,000 in punitive damages against defendant Deep Blue Group, LLC for her New York Labor Law §215 retaliation claim. The jury also awarded plaintiff Ba $5,000 in punitive damages for her sexual harassment claim against defendant Blech and plaintiff Veerman $10,000 in compensatory damages and $10,000 in punitive damages for her sexual harassment claim against defendant Lesort. The jury returned defense verdicts on plaintiffs' claims for discrimination based on race, color and national origin as well as on their misappropriation of gratuities claims. (Fridegotto Aff. Exh. A [Verdict Sheet ]).

## ARGUMENT

**1.**     **STANDARD OF REVIEW ON MOTION PURSUANT TO FED. R. CIV. P. 50(b)**

Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, a jury verdict may be set aside when the jury would not have a legally sufficient evidentiary basis to find for the non-moving party on that issue. *Port Auth. Police Asian Jade Soc'y of N.Y. & N.J., Inc. v. Port Auth. of N.Y. & N.J.*, 681 F. Supp.2d 456, 461 (S.D.N.Y. 2010). Granting such a motion is appropriate in the absence of evidence supporting the jury's verdict or the evidence is so in favor of the movant such that a reasonable and fair minded jury could not have returned a verdict in favor of the non-moving party. *Fidelity & Guaranty Insurance Underwriters, Inc. v. Jasam Realty Corp.*, 540 F.3d 133, 142 (2d Cir. 2008) (*quoting Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1046 (2d Cir. 1992)); See *Arlio v. Lively*, 474 F.3d 46,51 (2d Cir. 2007) (motion for judgment as a matter of law is appropriate when evidence, viewed in the light most favorable to the non-moving party is insufficient to permit a reasonable juror to find in his favor.).

## 2.   STANDARDS OF REVIEW APPLICABLE TO MOTION PURSUANT TO FED. R. CIV. P. 59

Rule 59(a) of the Federal Rules of Civil Procedure permits the Court to, after a jury trial, grant a new trial for any reason for which a new trial previously has been granted.  The standard for granting a motion under Rule 59(a) is less stringent than the standard under a Rule 50 motion in two respects: (1) a new trial under Rule 59(a) may be granted even if there is substantial evidence supporting the jury's verdict, and (2) a trial judge is free to weigh the evidence himself without viewing the evidence in the light most favorable to the non-moving party. See *Lewis v. City of N.Y.*, 689 F. Supp.2d 417, 424 (E.D.N.Y. 2010) ; See also, *Manley v. AmBase Corp.*, 337 F.3d 237, 244-45 (2d Cir. 2003) (same).  A motion pursuant to Rule 59(a) should be granted if the jury's verdict is seriously erroneous or the verdict is a "miscarriage of justice." *Medforms, Inc. v. Healthcare Mgmt. Solutions, Inc.*, 290 F.3d 98, 106 (2d Cir. 2002). Under Rule 59(e), a judgment may be altered or amended "to correct a clear error of law or to prevent manifest injustice." *Munafo v. Metropolitan Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004).

## 3.   DAMAGES GENERALLY

Although compensatory damages and punitive damages are typically awarded at the same time by the same decision maker, they serve distinct purposes. Compensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct and are therefore awarded when there has been an actual injury. *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 54 (1991). The Supreme Court in *Linn* v. *United Plant Guard Workers* defined actual harm as including "general injury to reputation, consequent mental suffering, alienation of associates, specific items of pecuniary loss, or whatever form of harm would be recognized by state law." *Linn v. United Plant Guard Workers*, 383 U.S. 53, 65 (1966).

Punitive damages on the other hand, are not compensation for injury. Punitive damages are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence. *Haslip*, at 54.

While juries enjoy broad discretion in awarding both types of damages, their power is not unfettered. The role of the trial judge is "to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59, whether a new trial or remittitur should be ordered." *Browning-Ferris Industries of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 279 (1989) cited in *Cooper Indus. v. Leatherman Tool Group*, 532 U.S. 424, 433 (U.S. 2001).

Reviews of damages are particularly important with respect to punitive damage awards. In *Exxon Shipping v. Baker*, 128 S. Ct. 2605 (2008) the Supreme Court considered the vast spectrum of punitive damages awards and acknowledged their concern for the "stark unpredictability of punitive awards." Id. at 2610. The Court emphasized the need to "protect against the possibility (and the disruptive cost to the legal system) of [punitive] awards that are unpredictable and unnecessary, either for deterrence or for measure retribution." Id. at 2633.

In *Gore*, the Supreme Court standard articulated three criteria that the Courts should use to evaluate the reasonableness of all punitive damage awards: (1) the degree of reprehensibility of the defendants' misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages awarded and (3) the difference between the punitive damages awarded and the civil penalties imposed and authorized in comparable cases. See *BMW of N. America v. Gore*, 517 U.S. 559, 575 (1996); *Lee v. Edwards*, 101 F.3d 805, 809 (2d Cir. 1996); *Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir. 1990); *Zakre v. Norddeutsche Landesank*

*Girozentrale*, 541 F. Supp. 2d 555 (S.D.N.Y. 2008); *Cross v. N.Y. City Transit Authority*, 417 F. 3d 241, 258 (2d Cir. 2005) ("Remittitur is the process by which a court compels the [prevailing party] to choose between the reduction of an excessive verdict and a new trial.")(citation and internal quotation marks omitted); *Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 337 (2d Cir. 1993) (remittitur is warranted when it demonstrated that the jury awarded specific amounts of damages that were not supported by the record).

It is respectfully submitted that there is an insufficient evidentiary basis to warrant damages at all in this case. The awards for damages are unsupported as a matter or law and vacatur is required. Plaintiff Ba failed to establish a prima facie case for retaliation under N.Y. Lab. Law §215 and the punitive damages awarded to her are excessive under the *Gore* standard as well as severely disproportionate in ratio to the actual harm. In addition, the punitive damage awards granted to Veerman and Ba do not meet the standards for punitive damages under either the *Gore* standard or the criterion used by the NYCHRL, the sole statutory framework pursuant to which the punitive damages are allowed to stand against individuals.

4.      **THE AWARD OF DAMAGES TO BA ON HER NEW YORK LABOR LAW §215 RETALIATION CLAIM IS UNSUPPORTED BY LAW**

a.      Plaintiff Ba Did not Establish a Prima Facie Case Under N.Y. Lab. Law §215

The jury's verdict found in favor of plaintiff Ba and against corporate defendant Deep Blue Group, LLC in her New York Labor Law §215 retaliation claim. The jury awarded Ba: 1) $3,000 in lost earnings; and 2) punitive damages in the amount of $24,000. The jury did not award Ba any compensatory damages. (Fridegotto Aff. Exh. A [Verdict Sheet ]).

In order to establish a prima facie case under N.Y. Lab. Law §215, a plaintiff must prove that while employed by defendants, she complained about her employer's violation of a

provision of the law and that she suffered an adverse employment action such as termination. *Lu v. Jing Fong Restaurant, Inc.*, No. 06 Civ. 2657, 2007 U.S. Dist. LEXIS 64832, at \*15 (S.D.N.Y. Sept. 4, 2007); *Kreinik v. Showbran Photo, Inc.*, No. 02 Civ 1172, 2003 U.S. Dist. LEXIS 18276, at \*29 (S.D.N.Y. Oct. 10, 2003); Higueros v. *New York State Catholic Health Plan*, No. 07 Civ. 0418 2009 U.S. Dist. LEXIS 57533 (E.D.N.Y. June 29, 2009). New York's anti-retaliation provision further requires that there be a nexus between the employee's complaint and the employer's retaliatory action. *Kreinik*, 2003 U.S. Dist. Lexis 18276, at \*29.

During the trial, Ba testified about an incident involving an unsigned customer bill:

- Ba testified about an incident involving a customer bill that the customers left unsigned. (Fridegotto Aff. Exh. B [Trial Tr. at p. 140:6-21].) The customers refused to sign the bill and walked out. (Fridegotto Aff. Exh. B [Trial Tr. at p. 178:4-9].) Ba testified that defendants asked her to pay the $569 bill that the customer refused to pay. She claimed that she was told that she needed to pay the bill by the end of the night or she did not need to return to work. (Fridegotto Aff. Exh. B [Trial Tr. at pp.142:9-23; 153:9-14].)

- Ba claimed that she knew of two occasions wherein white waitresses were asked to pay only 50% of disputed charges. (Fridegotto Aff. Exh. B [Trial Tr. at pp. 144:10-145:18].) Ba did not know how much the bills were in the alleged two incidents involving the white waitresses. She did not have copies of the bills. She did not know the circumstances regarding whether defendants received a disputed charge request regarding those two bills. (Fridegotto Aff. Exh. B [Trial Tr. at pp. 220:10-221:11].)

- Ba testified that she was not given the option to only pay 50% of the tab, though she stated she would have been willing to pay 50% of the bill. (Fridegotto Aff. Exh. B [Trial Tr. at p.153:9-14.])

- Ba testified that she was shown the chargeback request by Jimena Pereyra, the general manager of Opia. (Fridegotto Aff. Exh. B [Trial Tr. at pp. 178:1-179:4].) Ba did not know whether the restaurant actually owed any money as a result of the disputed charge. (Fridegotto Aff. Exh. B [Trial Tr. at p. 179:5-7].)

Ba's testimony was contradicted by the testimony of defendants and by the testimony of Jimena Pereyra, Opia's general manager. Defendants stated that there was no policy requiring cocktail waitresses to pay customer bills and that although they may have instructed their

employees to be vigilant of mistakes, they did not know of any instances in which the alleged policy was actually enforced:

- Lesort testified that Ba was not fired. (Fridegotto Aff. Exh. B [Trial Tr. at p. 450:15-19].)

- Lesort testified that as a result of server's errors, the restaurant had a substantial amount of money uncollected and lost. (Fridegotto Aff. Exh. B [Trial Tr. at p. 456:5-7].)

- Blech stated the credit card charge was being investigated. (Fridegotto Aff. Exh. B [Trial Tr. at p. 283:15-24].)

- Blech testified that asking cocktail waitresses to reimburse the restaurant was not a policy at Opia but that it was said in order to get the cocktail waitresses to pay attention to what they were doing. He further testified that it was not enforced. (Fridegotto Aff. Exh. B [Trial Tr. at pp. 274:5-275:1].)

- Jimena testified that she did not deduct money and she did not ask the cocktail waitresses to pay the client's bill and that she never asked Ba to pay a customer bill either (Fridegotto Aff. Exh. B [Trial Tr. at pp. 484:19-485:2; 496:24-497:4].) Jimena stated that she informed Ba about the existence of a credit card company inquiry on the bill that Ba did not obtain a signature on. (Fridegotto Aff. Exh. B [Trial Tr. at pp. 486:25-487:8].)

- Jimena testified that Ba walked out of the restaurant in the middle of service without notifying anyone after stating that she wanted to speak to Lesort and Antoine about the unsigned bill. (Fridegotto Aff. Exh. B [Trial Tr. at pp. 487:9-15; 499:10-18].)

Most importantly for the purposes of this motion however, there was no testimony of Ba complaining to defendants or to Jimena Pereyra about the incident involving the bill or the alleged request that she pay it. Ba never testified to complaining about being asked to pay the bill. Jimena's testimony regarding the fact that Ba walked out of the restaurant after asking to speak Frederick and Antoine was uncontradicted.

Claims for retaliation under the New York Labor Law require that the employee specifically inform her supervisor that the employer's practices violate particular provisions of the New York Labor Law. See *Nicholls v. The Brookdale Univ. Hospital Med. Ctr.,* 03 CV 6233 2004 U.S. Dist. LEXIS 12816 (E.D.N.Y. July 9, 2004) (finding that plaintiff "must show that she

complained to [her employer] about its violations of the Labor Law and that she was terminated because of her complaints); *Jacques v. DiMarzio, Inc.*, 200 F. Supp. 2d 151, 162 (E.D.N.Y. 2002); *Ellis v. HarperCollins Pub., Inc.*, No. 99 CIV. 12123, 2000 U.S. Dist. LEXIS 8598 (S.D.N.Y. June 21, 2000); *Mack v. Transport Workers Union of Amer.*, 00 Civ. 9231, 2002 U.S. Dist. LEXIS 5627 (S.D.N.Y. March 29, 2002).

Given that there was no evidence proffered by Ba that she <u>complained</u> (emphasis added) of being asked to pay the customer bill, her claim fails as a matter of law and must be dismissed. <u>See</u> *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 166 (W.D.N.Y. 2007) ("Because there is no evidence that any of the plaintiffs ever ... complained that [defendant] was violating specific provisions of the New York Labor Law, plaintiffs' retaliation claims fail as a matter of law, and must be dismissed.").[1]

Even assuming, *arguendo*, that plaintiff Ba established that she complained about the Labor law violation, the punitive damage award is excessive and fails to meet the *Gore* standard. For that reason, the punitive damage award should be reduced to $3,000 or dismissed in its entirety.

b.    <u>Plaintiff Ba's Punitive Damages Award does not Meet the *Gore* Standard</u>

In determining the reprehensibility of defendants' conduct, Courts commonly consider, *inter alia*, whether: (1) the harm caused was physical as opposed to economic; (2) the tortuous conduct evinced an indifference to or a reckless disregard for the health or safety of others; (3) the conduct involved repeated actions or was an isolated incident; and (4) the harm was the result

---

[1] In the alternative, the jury's award as to damages is unsupported and should be vacated or remitted, as discussed below.

of intentional malice, trickery, or deceit, or mere error in judgment. *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003).

There can be no finding of malice or reckless disregard by Deep Blue Group based upon the events even as described by Ba: she admitted that the credit card slip was unsigned and that as a result of her mistake, the restaurant was probably going to lose the $569. The alleged harm caused by defendant Deep Blue Group to plaintiff Ba was purely economic, as it entailed the loss of her job. The jury saw it fit to award Ba damages of $3,000 in lost wages to compensate her for that loss.

The conduct of Deep Blue Group in asking its employees to be responsible for their own mistakes was not malicious or deceitful, nor did it show a disregard for the health and safety of others. Lesort testified that the restaurant lost a lot of money every year as a result of server's mistakes and Blech testified that the restaurant needed to have a method to get the cocktail waitresses to pay attention to what they were doing, even if the policy was not enforced. (Fridegotto Aff. Exh. B [Trial Tr. at pp. 274:5-275:1; 456:5-7].)

The only evidence that the conduct involved repeated actions was proffered by Ba. She testified that she knew of two occasions wherein white waitresses were asked to pay only 50% of disputed charges, but she was unable to describe the circumstances regarding the actual events, when they took place and she did not know the amounts of the bills. (Fridegotto Aff. Exh. B [Trial Tr. at pp. 144:10-145:18; 220:10-221:11].) This testimony was contradicted by Blech and Jimena. (Fridegotto Aff. Exh. B [Trial Tr. at pp. pp. 274:5-275:1; 484:19-485:2; 496:24-497:4].) Furthermore, the testimony of Ba about these incident was in support of her claims that she received a disparate treatment from that which was given to the white waitresses, a claim that the

9

jury did not find convincing as it returned a defense verdict on plaintiffs' Title VII racial discrimination claims. It therefore follows that Deep Blue Group's treatment of Ba was not reprehensible as it was motivated only in an interest to avoid the loss of money by the restaurant, an acceptable business reason.

Plaintiff Ba's award of punitive damages similarly does not meet the second prong of the *Gore* standard. Ba claimed that she lost her job as a result of her protesting the restaurant's request that she pay the customer bill. The jury compensated her for that loss when it awarded her $3,000 in lost wages. (Fridegotto Aff. Exh. A [Verdict Sheet].)

Ba's limited testimony about her emotional distress was all attributable to the racial discrimination and sexual harassment. (Fridegotto Aff. Exh. B [Trial Tr. at pp. 157:16-25; 215:6-12].) She did not mention being asked to pay a customer bill as a source of emotional distress.

The disparity between the ratio of punitive damages awarded in comparison to plaintiff Ba's actual harm necessitates a substantial reduction of the punitive damage award. In *Exxon Shipping v. Baker*, 128 S. Ct. 2605 (2008) the Supreme Court considered the vase spectrum of punitive damages awards and acknowledged their concern for the "stark unpredictability of punitive awards" Id. at 2610 and concluded that a 1:1 ratio to compensatory damages is a fair upper limit given the need to protect against the possibility (and the disruptive cost to the legal system) of [punitive] awards that are unpredictable and unnecessary, either for deterrence or for measure retribution." Id. at 2633.

The ratio of punitive damages ($24,000)  to the actual damages (in the form of lost wages) awarded to Ba is an astounding 8:1 and the ratio is even more shocking if one considers that the jury did not deem it necessary to award Ba any compensatory damages for emotional

pain and suffering, inconvenience and mental anguish. In addition, the award of $24,000 in punitive damages against Deep Blue Group is similarly excessive even assuming that the jury wished to deter the employer from asking cocktail waitresses to pay for mistakes they'd made with customer bills. Deep Blue Group could potentially have lost close to $600 as a result of Ba's error. An award of $24,000 represents more than 40 times the amount in dispute as a result of the unpaid bill, a ratio that is shocking to the conscience.

While the Southern District of New York had declined to address the availability of punitive damages for retaliation under New York Labor Law in *Sines v. Serv. Corp. Int'l*, 03 Civ. 5465, 2006 U.S. Dist. LEXIS 82164, at *4 (S.D.N.Y. Nov. 8, 2006), in *Ting Yao Lin*, a case involving inter alia, a Labor Law §215 claim, the plaintiff's request for $5,000 in punitive damages was granted based on the review of jury verdicts based on the *Fowler* "garden variety" mental anguish claims standard commonly used to evaluate mental anguish awards. See *Ting Yao Lin v. Hayashi Ya II, Inc.*, 2009 U.S. Dist. LEXIS 12963, 24-29 (S.D.N.Y. Jan. 30, 2009); *Fowler v. New York Transit Auth.*, 96 Civ. 6796, 2001 WL 83228 at * 13 (S.D.N.Y. Jan. 31, 2001) (finding that Courts performing reviews of jury verdicts in discrimination and retaliation cases have noted the existence of 'so-called "garden variety" mental anguish claims). In "garden variety" mental anguish claims "the evidence of mental anguish suffered is generally limited to the testimony of the plaintiff, is described in vague or conclusory terms, without presenting evidence of the duration, severity or consequences of the condition, and there is minimal or no evidence of medical treatment." *Fowler v. New York Transit Auth.*, 96 Civ. 6796, 2001 WL 83228 at *13 (S.D.N.Y. Jan. 31, 2001); See also *Perez v. Jasper Trading, Inc.*, No. 05 CV 1725, 2007 U.S. Dist. LEXIS 92375 (S.D.N.Y Dec. 17, 2007) ("The evidence [in emotional distress

retaliation] cases usually consists of the plaintiff's own testimony describing the emotional distress, with little or no supporting medical evidence.").

The fact that the Southern District and New York courts have generally adopted a garden variety mental anguish standard to awards in retaliation claims means that Ba's award of punitive damages is unsupported by law. The jury had the opportunity to award Ba compensatory damages to compensate her for emotional pain and suffering, inconvenience and mental anguish but they did not do so. (Fridegotto Aff. Exh. B [Verdict sheet].)

For these reasons, plaintiff Ba's retaliation claim damages are unsupported by law and should be vacated, or in the alternative remitted. The punitive damages must therefore be reduced to $3,000 or dismissed entirely.

## 5.   THE PUNITIVE AWARDS FOR SEXUAL HARASSMENT AWARDED TO VEERMAN AND BA ARE UNSUPPORTED BY LAW

### a.   Availability Of Punitive Damages Generally Under Statutory Frameworks

At the conclusion of the trial, the jury found in favor of plaintiff Veerman on the sexual harassment/ retaliation claim and awarded her $10,000 in compensatory damages and $10,000 in punitive damages against defendant Lesort only. The jury similarly found in favor of plaintiff Ba on the sexual harassment/ retaliation claim and awarded her $5,000 in punitive damages against defendant Blech only.

Plaintiffs Ba and Veerman each had claims for sexual harassment and retaliation for opposing, objecting to or complaining of sexual harassment against the defendants pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq., the Civil Rights Act of 1866, as amended ("Section 1981"), 42 U.S.C. § 1981 et seq., the New

York State Human Rights Law (the "NYSHRL"), N.Y. Exec. L. § 290 et seq., and the New York

City Human Rights Law, (the "NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq.

It is well established that individual defendants, including individual defendants with

supervisory control over plaintiffs, may not (emphasis added) be held personally liable under

Title VII. *See Tomka v. Seiler Corp.*, 66 F.3d 1295 (2d Cir. 1995), abrogated on other grounds by

*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. City of Boca Raton*, 524

U.S. 775 (1998); See also *Corr v. MTA Long Island Bus*, 1999 U.S. App. LEXIS 25058 (2d Cir.

1999); *Spiegel v. Schulmann*, 604 F.3d 72 (2d Cir. 2010). Plaintiffs' Title VII claims against

Lesort and Blech cannot be supported as a matter of law and therefore it follows that the jury's

findings as to liability and damages against Lesort and Blech individually must be analyzed

solely pursuant to the NYSHRL and the NYCHRL standard.

The NYSHRL generally makes it unlawful for an employer to discriminate on the basis

of, *inter alia*, race, creed, color, or sexual orientation. See N.Y. Exec. Law § 296. The NYSHRL

allows for individual defendants to be sued in their personal capacities for sexual harassment and

retaliation based on sex pursuant to the New York courts' interpretations of two separate sections

of the Executive Law. N.Y. Exec. Law 296 §(1) permits lawsuits to be brought directly towards

individuals who meet the Executive Law's definition of "employer" by the fact that they have an

ownership interest in the employer or power to do more than carry out the personnel decisions

made by others. *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, 543, 483 N.Y.S.2d 659, 473

N.E.2d 11 (1984). See also *Kadesh v. United Air Lines*, No. 02 Civ. 9058, 2003 U.S. Dist.

LEXIS 2548 at *5 (S.D.N.Y. Feb. 19, 2003) ( [A] corporate employee … is not individually

subject to suit to discrimination under the NYCHRL … if he is not shown to have any ownership

interest or any power to do more than carry out personnel decisions made by others.)

Additionally, individuals may be liable pursuant to N.Y. Exec. Law § 296(6) which states that it shall be an unlawful discriminatory practice "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so." In *Tomka*, the Second Circuit found that this language allowed a co-worker who "actually participates in the conduct giving rise to a discrimination claim" to be held liable under the NYSHRL even though that co-worker lacked the authority to either hire or fire the plaintiff. *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995).

The same standards of analysis used to evaluate aiding and abetting claims under the NYSHRL apply to such claims under the NYCHRL because the language of the two laws is "virtually identical." *Dunson v. Tri-Maintenance & Contractors*, Inc., 171 F. Supp. 2d 103, 113-114 (E.D.N.Y. 2001); See also *Kato v. Ishihara*, 239 F. Supp. 2d 359, 365 (S.D.N.Y. 2002) (finding that an individual may be held liable under the NYCHRL if he or she engaged in "discriminatory acts"); *Lamberson v. Six West Retail Acquisition, Inc.*, 122 F. Supp. 2d 502, 513 (S.D.N.Y. 2000) (applying the aider and abetter standard set forth in *Tomka* to claims under the NYSHRL and the NYCHRL); *Sowemimo v. D.A.O.R. Sec., Inc.*, 43 F. Supp. 2d 477, 490 (S.D.N.Y. 1999) ("Employees may be held personally liable under the NYSHRL and the NYCHRL" if they participate "in the conduct giving rise to a discrimination claim.").

Under the standard for aiding and abetting liability, there is however a "requirement that liability must be first established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor." See *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y 1999) (Supervisor who committed the sexual harassment could not be held personally liable under §296(6) because plaintiff could not state a claim of sexual harassment against the employer); *Sowemimo v. D.A.O.R. Sec., Inc.*, 43 F. Supp. 2d 477, 490 (S.D.N.Y. 1999)

(plaintiff's failure to establish liability against individual defendant's employer eliminated plaintiff's claims against the individual defendant as an aider and abettor under the NYSHRL.)

The corporate defendant Deep Blue Group, LLC was not found to be liable for the sexual harassment/retaliation claims of the plaintiffs. (See Verdict Sheet, Exh. A.) It therefore follows that the jury's punitive damages verdicts against Lesort and Blech individually can only be supported pursuant to the NYSHRL and the NYCHRL ownership provisions and should therefore be analyzed pursuant to those statutory frameworks, as should its awards as to damages.

    b.    <u>Standard of Proof for Punitive Damages</u>

The standard of proof for punitive damages is a strict and rigid one which imposes a formidable burden on plaintiff. *Robinson v. Instructional Sys., Inc.* 80 F. Supp. 2d 203 (S.D.N.Y 2000) aff'd, 259 F. 3d 91 (2d Cir. 2001). Plaintiffs are only entitled to punitive damages against a defendant employer under Title VII if they meet a stringent burden of proof and come forward with explicit evidence that a defendant's conduct was motivated by "evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Tolbert v. Queens Coll.*, 242 F.3d 58, 77 (2d Cir. 2001) (citing *Smith v. Wade*, 461 U.S. 30, 56, (1983)). In order to establish malice or reckless indifference, plaintiffs must demonstrate that the defendant had the "requisite state of mind" of malice and indifference. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 538 (1999); *See also Luciano v. Olsten Corp.*, 110 F.3d 210, 219-20 (2d Cir. 1997). A plaintiff must show that the "employer . . . at least discriminated in the face of a perceived risk that its actions will violate federal law." *Kolstad*, 527 U.S. at 536. However, given that individuals cannot be personally liable for Title VII violations, the punitive damages

awarded to plaintiffs in this case for sexual harassment cannot be ascribed to a violation of Title VII.

Punitive damages are not awardable for discriminatory practices in actions brought pursuant to the NYSHRL. *Thoreson v. Penthouse International, Ltd.*, 80 N.Y.2d 490; 606 N.E.2d 1369 (1992) reconsid. denied, 81 N.Y.2d 835, 595 N.Y.S.2d 397, 611 N.E.2d 298 (1993) (punitive damages not available for Executive Law claims brought in court;) *Bridges v. Eastman Kodak Co.*, 822 F. Supp. 1020, 1029 (S.D.N.Y 1993). It therefore follows that the punitive damages awarded to plaintiffs in this case for sexual harassment cannot be attributed to the individual defendants' violations of the NYSHRL.

Punitive damages are awardable against individual defendants under the NYCHRL, making the NYCHRL the only statutory framework pursuant to which the awards of punitive damages against defendants Lesort and Blech can be supported. The standard adopted by the Courts in assessing the propriety of such damages is the same stringent standard used in Title VII. A "positive element of conscious wrongdoing" is therefore required for an award of punitive damages. *Farias v. Instructional Sys., Inc.* 259 F. 3d. 91 (2d Cir. 2001) (When punitive damages claims co-exist under Title VII and the NYCHRL, the Court is guided by principles applied under Title VII and the malice and reckless indifference standard apply to assessing punitive damages under both statutes). Under Title VII, punitive damages are limited to cases in which the employer has engaged in intentional discrimination and has done so with malice or with reckless indifference to the protected rights of the aggrieved individual. Malice and reckless indifference refer to the employer's knowledge that it may be acting in violation of the law, not its awareness that it is engaging in discrimination.

Punitive damages are intended to "punish the defendant and deter him and others from similar conduct in the future" so the damages must be "reasonable in their amount and rational in light of their purpose." *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 54 (1991). The amount of punitive damages awarded should not be greater than the amount reasonably necessary to fulfill the twin purposes of punishment and deterrence, otherwise the award is a windfall to the plaintiff. See *Vasbinder v. Scott*, 976 F.2d 118 (2d Cir. 1992)(citation omitted); *Bisignano v. Korff*, No. 00 Civ. 5640, 2001 U.S. Dist. LEXIS 12529 (S.D.N.Y. Mar. 22, 2001).

c.   Plaintiffs Veerman and Ba's Punitive Damages Awards do not Meet the Reprehensibility *Gore* Standard nor the NYCHRL Malice standard

It is respectfully submitted that the Veerman and Ba did not meet the standard of proof required for punitive damages required under the *Gore* standard and under the NYCHRL.

In determining the reprehensibility of defendants' conduct, Courts commonly consider, *inter alia*, whether: (1) the harm caused was physical as opposed to economic; (2) the tortuous conduct evinced an indifference to or a reckless disregard for the health or safety of others; (3) the conduct involved repeated actions or was an isolated incident; and (4) the harm was the result of intentional malice, trickery, or deceit, or mere error in judgment. *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 419, 123 S. Ct. 1513, 155 L. Ed. 2d 585 (2003); *Thomas v. iStar Fin., Inc.* 508 F. Supp. 2d 252, 262 (S.D.N.Y 2007) (greatly reducing the punitive damage award because there was "no finding by the jury that the defendants had intentionally discriminated against plaintiff:); *Iannone v. Frederic R. Harris, Inc.* 941 F. Supp. 403, 415 (S.D.N.Y. 1996) (reducing punitive damages award in part because there was no evidence that retaliation alleged by the plaintiff was "part of any pattern of sanctioning employees who complained of alleged harassment").

17

The evidentiary record precludes both plaintiffs from meeting their stringent burden of proof to support a punitive damage award against the individual defendants. Plaintiffs failed to prove that either Lesort or Blech acted with reckless and willful evil intent and malice. In fact, the evidentiary record did not establish the existence of willful, reckless, or reprehensible conduct by the defendants.

In the instant case, plaintiff Veerman was awarded $10,000 in punitive damages against Frederick Lesort individually for the sexual harassment/retaliation based on sex claim. Veerman's testimony regarding the sexual harassment she suffered at the hands of Lesort does not meet the requisite standard for punitive damages:

- Veerman testified that Lesort made comments about her legs and asked her whether she worked out; told her she was beautiful and made comments about everyone from Brazil being attractive; complimented her on what she was wearing. (Fridegotto Aff. Exh. B [Trial Tr. at pp. 314:17-315:5; 362:10-11].) She testified that Lesort asked her if she was married. (Fridegotto Aff. Exh. B [Trial Tr. at p. 360:2-7].)

- Veerman testified that Lesort touched her arms and neck. (Fridegotto Aff. Exh. B [Trial Tr. at p. 315:19-25].) She testified that he tried to kiss her once and touched her breast once for five seconds. (Fridegotto Aff. Exh. B [Trial Tr. at pp. 358:1-21; 359:16-20].)

- Veerman stated Lesort also touched her shoulders and arms ten to 15 times. (Fridegotto Aff. Exh. B [Trial Tr. at p. 362:5-9].)

- Lesort testified that he asked Veerman to dinner because he was interested in her. (Fridegotto Aff. Exh. B [Trial Tr. at p. 445:12-14].)

- Lesort testified that he kissed Veerman on the cheeks. He denied touching her breast. (Fridegotto Aff. Exh. B [Trial Tr. at p. 449:6-18].)

Even assuming *arguendo* that Veerman's testimony wasn't contradicted by Lesort, it does not meet the requisite standard of malice or willful evil intent. The conduct allegedly exhibited by Lesort did not cause Veerman any physical harm and the conduct did not show an indifference or reckless disregard for the health and safety of Veerman. Furthermore, there was

no testimony by Veerman evidencing that Lesort's intentions were veiled with an intent to cause her harm or to deceive her. In fact, given Lesort's admission that he invited Veerman for dinner because he was "interested" supports the conclusion that his behavior was, if anything, at most an error in judgment. (Fridegotto Aff. Exh. B [Trial Tr. at p. 445:12-14].)

Plaintiff Ba was awarded $5,000 in punitive damages despite not being awarded any compensatory damages for her sexual harassment/ retaliation based on sex claim. The fact that jury did not see it fit to award Ba any damages for emotional pain and suffering, inconvenience or mental anguish, is alone a basis for vacating the punitive damages award against Blech as well as attorneys fees on that claim. See *Coffey v. Dobbs International Services, Inc.*, 170 F.3d 323, 325 (2d Cir. 1999). Furthermore, the evidence that was put forth at trial did not support a finding that Blech exhibited any malice or reckless disregard to Ba's protected rights in his dealings with her:

- Blech testified that he and Ba were friends and had a friendly relationship. (Fridegotto Aff. Exh. B [Trial Tr. at p. 273:1-7].)

- Blech went out with Ba socially on a couple of occasions, a parties and at dinner. (Fridegotto Aff. Exh. B [Trial Tr. at pp. 263:10-20; 273:5; 283:13-285:3; 291:18-292:2].) Ba did not contradict this.

- Blech testified that he drove Ms. Ba home on three occasions. (Fridegotto Aff. Exh. B [Trial Tr. at pp. 266:9-10; 292:6].) Ba did not contradict this.

- Blech testified that he and Ba engaged in consensual sexual conduct at her home. (Fridegotto Aff. Exh. B [Trial Tr. at p. 266:14-267:1].)

- Blech saw Ba socially with friends after she left Opia. He testified they had a drink together with friends of his. (Fridegotto Aff. Exh. B [Trial Tr. at p. 276:16-277:8].) Ba did not contradict this.

d.    Plaintiffs Veerman and Ba's Punitive Damages Awards are Disparate to their Actual Harm

The Supreme Court in Linn defined actual harm as including "general injury to reputation, consequent mental suffering, alienation of associates, specific items of pecuniary loss, or whatever form of harm would be recognized by state law." *Linn v. United Plant Guard Workers*, 383 U.S. 53, 65 (U.S. 1966).

In order to analyze the relationship between the plaintiffs' actual harm and their awards of punitive damages, their actual harm has to be scrutinized first. There was no testimony regarding any injury to reputation or alienation of associates.  There was testimony by both plaintiffs Ba and Veerman that they were fired as a result of the sexual harassment/retaliation based on sex and that as a result, they suffered a pecuniary loss in the form of lost wages and earnings. (Fridegotto Aff. Exh. B [Trial Tr. at pp. 153:2-14; 155:2-3; 338:18-339:19].)  The jury however did not award them any lost wages as damages.

Mental suffering is a form of 'actual harm' that is recognized under the NYSHRL and the NYCHRL. However, pursuant to both the NYSHRL and the NYCHRL, the finding of liability is not sufficient, in and of itself, to warrant an award of compensatory damages. Plaintiffs must prove entitlement to them under both the statutory frameworks. See *Fowler v. New York Transit Auth.*, No. 96 Civ. 6796, 2001 WL 83228, at *10 (S.D.N.Y. Jan. 31, 2001) ("[C]ompensatory damages must be proven and not presumed.") "It does not follow that simply because there was retaliation, there must be an award of compensatory damages; rather, the compensatory damages must be proven and not presumed." *McIntosh v. Irving Trust Co.*, 887 F. Supp. 662, 665 (S.D.N.Y. 1995). Rather than evidence of retaliation, the plaintiff must provide proof that she "in fact suffered mental anguish or humiliation[.]" *Cullen v. Nassau County Civil Serv. Comm'n*, 53

N.Y.2d 492, 425 N.E.2d 858, 861, 442 N.Y.S.2d 470 (1981); See also *McIntosh*, 887 F. Supp. at 665; *Fowler,* supra.

Evidence that a plaintiff sought medical or psychiatric treatment generally will entitle a plaintiff to greater damages for mental anguish and emotional distress. See *DiStefano v. Long Island Rail Road Co.*, No. 96 Civ. 5487, 1999 WL 1704784, at *7 (E.D.N.Y. Dec. 21, 1999); *Bick v. The City of New York*, No. 95 Civ. 8781, 1998 U.S. Dist. LEXIS 5543, 1998 WL 190283, at *25 (S.D.N.Y. Apr. 21, 1998). The most common award of compensatory damages under the NYHRL ranges between $5,000 and $10,000. See *McIntosh v. Irving Trust Co.*, 887 F. Supp. 662 (S.D.N.Y. 1995) (reducing award of $219,428.00 to $20,000 and finding that plaintiff introduced such sparse evidence of the magnitude and severity of emotional injuries and mental distress than the "jury was forced to speculate in awarding him compensatory damages".)

The jury awarded Veerman $10,000 in compensatory damages for emotional pain and suffering, inconvenience and mental anguish. The jury did not award Ba any compensatory damages. (Fridegotto Aff. Exh. A [Verdict Sheet].)

The ratio between Veerman's award of $10,000 in compensatory damages and her award of punitive damages is 1:1. However, Veerman's award of $10,000 in compensatory damages should be vacated or at a minimum, reduced, and the punitive damages award should be modified accordingly as the compensatory award was unsupported by evidence of mental anguish as evidenced in Veerman's limited testimony:

- Veerman did not think it necessary to report the incident regarding the alleged inappropriate touching by Lesort to Jimena or Blech. (Fridegotto Aff. Exh. B [Trial Tr. at pp. 358:22-359:10].)

- Veerman did not see any medical professionals or mental health specialists. (Fridegotto Aff. Exh. B [Trial Tr. at p. 421:5-23].)

- Veerman conceded that the harassment did not affect her economic, social or emotional wellbeing. Veerman testified she got very good grades and that the events at Opia did not impact her school work. (Fridegotto Aff. Exh. B [Trial Tr. at p. 422:11-17].) She also testified that she was getting married and that the events did not affect her social life. (Fridegotto Aff. Exh. B [Trial Tr. at p. 422:18-22].) Her ability to get a new job was not impacted either. (Fridegotto Aff. Exh. B [Trial Tr. at pp. 422:23-424:2].)

- Veerman testified briefly about her emotional distress. She stated that she found the sexual and racial harassment embarrassing and that it made her angry. She testified that she cried alone because she had nobody to talk to though she did admit she had family members that she did not tell about what was happening. She did not seek medical attention. (Fridegotto Aff. Exh. B [Trial Tr. at p. 340:17-342:7].)

- Veerman testified that she achieved her lifetime dream, graduated from nursing school and became a registered nurse. (Fridegotto Aff. Exh. B [Trial Tr. at p. 351:21-352:7].)

The discrepancy between the actual harm and the punitive damages is even more extreme in regards to plaintiff Ba. The testimony put forth by Ba regarding her emotional distress was limited and was not sufficient to persuade the jury to award her any compensatory damages for emotional pain and suffering, inconvenience and mental anguish:

- Ba testified that Blech's conduct make her feel very uncomfortable, and that it made her feel as if she were an object. (Fridegotto Aff. Exh. B [Trial Tr. at p. 154:16-21].)

- Ba testified that the emotional distress she felt was attributable to being touched by defendant Blech; to being told that she was too black; to the not being given a fair chance to make as much money as the white waitresses. (Fridegotto Aff. Exh. B [Trial Tr. at p. 157:16-25].) Ba testified that she suffered damages as a result of sexual harassment and racial discrimination and that she suffered emotional distress. (Fridegotto Aff. Exh. B [Trial Tr. at p. 215:6-12].) She did not mention being asked to pay a customer bill as a source of emotional distress.

- Ba never saw a doctor for her emotional distress, nor did she see a support group or seek therapy. (Fridegotto Aff. Exh. B [Trial Tr. at p. 215:13-25].) Ba testified that her university surely offered health services for victims of crimes or people with problems, but that she never thought to go. (Fridegotto Aff. Exh. B [Trial Tr. at p. 216:1-6].)

- Ba testified that while at Opia she never looked for another job. (Fridegotto Aff. Exh. B [Trial Tr. at p. 175:2-5].)

- Ba wanted to go back to work at Opia (Fridegotto Aff. Exh. B [Trial Tr. at pp. 180:20-181:12].)

- Ba did not apply for unemployment benefits. (Fridegotto Aff. Exh. B [Trial Tr. at p. 180:17-125].)

The discrepancy between the actual harm and the punitive harm is therefore extreme in Ba's case as she was not awarded lost wages for her sexual harassment/ retaliation claim nor any compensatory damages for emotional pain, inconvenience or mental anguish. The fact that jury did not see it fit to award Ba any actual, is alone a basis for precluding Ba from recovering punitive damages award and attorneys fees on that claim. See *Coffey v. Dobbs International Services, Inc.*, 170 F.3d 323, 325 (2d Cir. 1999).

e.   Plaintiffs Veerman and Ba's Punitive Damages Excessive Considering Similar Cases

A review of the damages awarded in other cases confirms the impropriety and excessiveness of the punitive damages awards in the instant case. See *Scala v. Moore McCormack Lines, Inc.*, 985 F. 2d 680, 684 (2d Cir. 1993) (In reviewing damage awards in other cases, the Court must examine the particular facts and circumstanced of the other cases and compare them to those of the case at bar.); *Eisenberg v. Reid*, 74 Fed. Appx. 110, 112-13 (2d Cir. 2003).

A Federal District Court must apply New York law to evaluate whether awards in cases decided under New York law are excessive. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 437-438 (1996). Pursuant to C.P.L.R. §5501(c) a trial court should reduce an award when it deviate materially from the reasonable compensation awarded in similar cases. See N.Y. C.P.L.R

§5501(c).[2] The 'deviates materially' standard for reviewing awards is less deferential to jury verdicts that the federal 'shock the conscience' standard because it does not permit a reviewing court to sustain a damage award that is out of line with awards allowed for similar injuries, even if the amount awarded by the jury is not sufficiently high to shock the court's conscience. See Gasperini, 518 U.S. at 424-425.

The evidentiary record establishes that plaintiffs failed to prove the requisite conduct required for an award of punitive damages and therefore vacatur is warranted. Courts routinely vacate punitive damages awards in discrimination cases where plaintiffs come forward with evidence of far more egregious conduct than that which was alleged, much less proved here. A review of cases where awards for far more egregious conduct were deemed excessive reveals that vacatur, or at a minimum remittitur is required at bar:

- *Weissman v. Dawn Joy Fashions, Inc.*, 214 F. 3d 224 (2d Cir. 2000) (affirming vacatur of punitive damages and finding in ADA and NYCHRL suit that alleged egregious acts did not support an inference of evil motive where supervisor <u>admitted</u> (emphasis added) that he terminated plaintiff for disability related absences two weeks after a heart attack and cancelled health coverage);

- *Farias v. Instructional Sys., Inc.* 259 F. 3d. 91 (2d Cir. 2001) (affirming ruling to not submit punitive damages issue to the jury despite evidence that the defendant intentionally retaliated against plaintiff for filing an EEOC complaint by not providing severance and other benefits provided to other employees because conduct did not support inference of reckless indifference and did not amount to egregious or outrageous conduct)

- *Harsco Corp. v. Renner*, 475 F. 3d 1179 (10th Cir. 2007) (affirmed vacatur of $20,00 punitive damages award in harassment case because of plaintiff's paucity of evidence that the company failed to make good faith efforts to comply with Title VII where, inter alia, coworkers made oinking and barking noises at plaintiff while she ordered lunch, state that "she's so fat you would have to lift up her gut to f*ck her," repeatedly stepped on her

[2] N.Y. C.P.L.R. §5501(c) provides in relevant part: "In reviewing a money judgment … in which it is contended that the award is excessive or inadequate and that a new trial should have been granted unless a stipulation is entered to a different award, the appellate division shall determine that an award is excessive or inadequate if it deviates materially from what would be reasonable compensation." Though drafted to be directed at appellate divisions, C.P.L.R. §5501(c) has been held to apply to trial courts as well. See Gasperini, 518 U.S. at 425.

shoes, referred to her as "bitch" and "fat f*cking c*nt" and stated that they did not like women in the workplace.)

- *Ettinger v. State Univ. of N.Y. State Coll. Of Optometry*, No. 95 Civ 9893, 1998 U.S. Dist. LEXIS 2289 (S.D.N.Y. Feb.26, 1998) ($50,000 punitive damages against individuals defendants in Title VII and city law claims reduced to $2,000 each because a "survey of state court decisions indicates that imposition of $2,000 per defendant would serve as a deterrent, would match the degree of reprehensibility of the individual defendants' conduct, and would comport with reductions made in other cases");

- *Binder v.* Long Island Lighting Co., 847 F. Supp.1007, 1028 rev'd on other grounds, 57 F.3d 193 (2d Cir. 1997) (award reduced from $497,738 to $5,000 where plaintiff testified of feeling discouraged and very alone);

- *Buffalo Athletic Club v. New York State Division of Human Rights*, 249 A.D.2d 986, 672 N.Y.S.2d 210 (4th Dept 1998) (reducing $20,000 award to $10,000 for discriminatory failure to hire where plaintiff testified she was hurt, irritable, that she remained in bed and suffered headaches and stomach distress and postponed job search for two months);

- *Manhattan and Bronx Surface Transit Operating Authority v. New York State Executive Department*, 220 A.D.2d 668, 632 N.Y.S.2d 642 (2nd Dept 1995) (reducing award of $30,000 to $7,500 where plaintiff testified to being devastated, that his distress "disturbed his sleep", caused weight gain and exacerbation of high blood pressure though plaintiff did not Seek medical or psychiatric treatment);

- *Cosmos Forms, Ltd., v. State Div. of Human Rights*, 150 A.D.2d 442, 541 N.Y.S.2d 50 (2d Dept 1989) (reducing award of $35,000 for discriminatory termination to $5,000 when only evidence of mental anguish was the complainant's own testimony that she was emotionally and physically "screwed up and there was no evidence of duration of the condition, its severity, its consequences or of any medical treatment)

- *Quality Care Inc. v. Rosa,* 194 A.D.2d 610, 599 N.Y.S.2d 65 (2d Dept 1993) (award reduced from $10,000 to $5,000 where evidence limited to plaintiff's testimony that she was shocked and devastated);

- *Reiter v. Metropolitan Transportation Authority of New York*, No. 01 Civ. 2762, 2003 U.S. Dist. LEXIS 17391 (S.D.N.Y. Sept. 30, 2003) (reducing award of $140,000 to $10,000 when plaintiff testified in conclusory terms to feelings of distress and nervousness but did not proffer evidence of medical treatment nor evidence that the demotion disrupted personal or family life. The Court concluded that the award was plainly based on "sympathy and speculation rather than dispassionate common sense");

- *New York State Dep't Correctional Servs. v. State Div. of Human Rights*, 207 A.D.2d 585, 615 N.Y.S.2d 531 (3d Dept 1994) (reducing award of damages for mental anguish and humiliation from $25,000 to $10,000 when plaintiff testified that as result of discriminatory conduct by her employer she felt frustrated, depressed and angry and lost sleep and fought with her fiancé, as well as visited a psychiatrist 5-6 times);

- *Empbanque Capital Corp. v. White*, 158 A.D.2d 686, 551 N.Y.S.2d 957 (2d Dept 1990) (reducing award from $35,000 to $5,000.)

## CONCLUSION

Plaintiff Ba failed to establish a prima facie case for retaliation based on the New York Labor Law §215 and her punitive award was grossly excessive, unsupported in law and disproportionate, particularly in light of the fact that the jury did not award her any compensatory damages.

It is further submitted that plaintiff Veerman failed to meet the requisite standards for an award of compensatory damages under the NYSHRL and NYCHRL and therefore that award should be vacated or in the alternative, reduced or remitted, as should its corresponding punitive damages for her sexual harassment/retaliation based on sex claims. Plaintiff Ba's award for punitive damages should be vacated in its entirety on the basis that the jury did not award her any compensatory damages, making the punitive damages award untenable. Alternatively, both punitive damage awards should be reduced or remitted on the basis that they do not conform with the requirements set forth by the Supreme Court in *Gore*.

For the foregoing reasons, Defendants respectfully request that the Court grant their Motions and such other further relief as the Court may deem just and proper.

Dated: New York, New York
    July 22, 2010

                    HAVKINS ROSENFELD RITZERT &
                    VARRIALE, LLP

                    By: _____
                        Linda Fridegotto (LF4290)
                        1065 Avenue of the Americas, Suite 800
                        New York, New York 10018
                        (212) 488-1598
                        HRRV File No.: 11170-101
                        *Attorneys for Defendants Deep Blue Group,*
                        LLC, Frederick Lesort and Antoine Blech

## CERTIFICATE OF SERVICE

I, **LINDA FRIDEGOTTO,** hereby certify that on July 23, 2010, the foregoing document, **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION PURSUANT TO FED.R. CIV. P. 50 AND FED. R. CIV. P. 59,** was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Southern District's Local Rules, and/or the Southern District's Rules on Electronic Service upon the following parties and participants:

Kenneth Goldberg, Esq.
Goldberg & Fliegel LLP
60 East 42nd Street, Suite 3421
New York, New York 10165

**LINDA FRIDEGOTTO, ESQ. (LF4290)**
*Attorneys for Defendants DEEP BLUE
GROUP LLC, OPIA, FREDERICK LESORT,
AND
ANTOINE BLECH (a/k/a Antoine Bleck)*
1065 Avenue of the Americas, Suite 800
New York, New York 10018
Main No.: (212) 488-1598
File No.: 11170-101