Kenneth A. Goldberg, Esq.
**GOLDBERG & FLIEGEL LLP**
60 East 42nd Street, Suite 3421
New York, New York 10165
(212) 983-1077
Attorneys For The Plaintiffs
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BEATRIZ VEERMAN AND KHADIJETOU   :   **1:08-CV-05042-LAB**
("KADIA") BA,

                               :

                Plaintiffs,

                               :

            - against -

                               :

DEEP BLUE GROUP LLC, OPIA,
FREDERICK LESORT, AND ANTOINE   :
BLECH (a/k/a Antoine Bleck),

                               :

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**APPLICATION FOR STATUTORY FEES AND COSTS**
**AND PRE-JUDGMENT INTEREST**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

I.     STANDARDS FOR AWARDING ATTORNEYS' FEES . . . . . . . . . . . . . . . . . . . . . 7

       A.     The City HRL, Title VII And Labor Law Provide For Attorneys' Fees  . . . . . . . 7

       B.     Statutory Attorneys' Fees Under Title VII And The Labor Law
              Are Awarded According To The *Arbor Hill* "Presumptively
              Reasonable Fee" Method . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

       C.     Statutory Attorneys' Fees Under The City HRL
              Are Awarded More Liberally . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

II.    HOURLY RATES OF AT LEAST $400 PER HOUR FOR MR. GOLDBERG
       AND AT LEAST $300 PER HOUR FOR MR. MARGOLIS ARE
       REASONABLE AND SHOULD BE ADJUSTED UPWARD . . . . . . . . . . . . . . . . . . . 11

III.   PLAINTIFFS' BASE HOURLY RATES MERIT AN
       UPWARD ADJUSTMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

IV.    THE NUMBER OF HOURS EXPENDED IS REASONABLE . . . . . . . . . . . . . . . . . . 16

V.     PLAINTIFFS' APPLICATION FOR COSTS IS MODEST
       AND MERITORIOUS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VI.    DEFENDANTS SHOULD BE HELD JOINTLY AND SEVERALLY
       LIABLE FOR PLAINTIFFS' ATTORNEYS' FEES AND COSTS . . . . . . . . . . . . . . . 18

VII.   THE COURT SHOULD AWARD PLAINTIFFS
       PRE-JUDGMENT INTEREST . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

**Federal Cases**

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 14, 16

Bridges v. Eastman Kodak Co., 102 F.3d 56 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Cretella v. Liriano, 633 F. Supp. 2d 54  (S.D.N.Y. 2009) (Swain, J.) . . . . . . . . . . . . . . . . . . . 11

Estrella v. P.R. Painting Corp., 596 F. Supp. 2d 723 (E.D.N.Y. 2009) (Spatt, J.)  . . . . . . . . . . . 8

Germain v. County of Suffolk, 672 F. Supp. 2d 319 (E.D.N.Y. 2009) (Spatt, J.) . . . . . . . . . . . 13

Heng Chan v. Sung Yue Tung Corp., No. 03 Civ. 6048, 2007 WL 1373118 (S.D.N.Y. May 8, 2007) (Lynch, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Hensley v. Eckerhart, 461 U.S. 424 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15, 17

J.S. Nicol, Inc. v. Peking Handicraft, Inc., No. 03-civ-1548, 2008 WL 4613752 (S.D.N.Y. Oct. 17, 2008) (Peck, M.J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir.1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14-16

Kassim v. City of Schenectady, 415 F.3d 246 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 9

Kerr v. Quinn, 692 F.2d 875 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Koster v. Perales, 903 F.2d 131 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . 10, 11

Lyte v. Sara Lee Corp., 950 F.2d 101 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

McQueen-Starling v. United Health Group, Inc., No. 08 Civ. 4885, 2010 WL 768941 (S.D.N.Y. Mar. 2, 2010) (Koeltl, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Melie v. EVCI/TCI College Admin., No. 09-2611-cv, 2010 WL 1531325 (2d Cir. Apr. 19, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Mng Shu Jin v. Pacific Buffet House, Inc., No. 06-cv-00579, 2010 WL 2653334 (E.D.N.Y. June 25, 2010) (Pohorelsky, M.J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Mugavero v. Arms Acres, Inc., No. 03-civ-05724,  2010 WL 451045 (S.D.N.Y. Feb. 09, 2010) (Gardephe, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Raniola v. Bratton, No. 96 Civ. 4482, 2003 WL 1907865 (S.D.N.Y. Apr. 21, 2003) (Dollinger, M.J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Rios v. Neighborhood Construction Corp., No. 07 Civ. 8701, 2009 WL 3335354 (S.D.N.Y. Oct.

14, 2009) (Swain, J.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rozell v. Ross-Holst, 576 F. Supp. 2d 527 (S.D.N.Y. 2008) (Francis, M.J.) . . . . . . . . . . . . . 17

Spiegel v. Schulmann, 604 F.3d 72 (2d Cir. 2010) (per curiam) . . . . . . . . . . . . . . 10, 11, 14, 18

Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782 (1989) . . . . . . . . . . . . 8

Vilkhu v. City of N.Y., No. 06-Civ.-2095, 2009 WL 1851019 (E.D.N.Y. June 26, 2009) (Sifton, J.), vacated and remanded on other grounds, 2010 WL 1571616 (2d Cir. Apr. 21, 2010) (summary order) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Wise v. Kelly, 620 F. Supp. 2d 435 (S.D.N.Y. 2008) (Scheindlin, J.) . . . . . . . . . . . . . . . . 11, 13

Woodford v. Cmty. Action Agency, 239 F.3d 517 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . 8, 15

**Federal Statutes**

18 U.S.C. § 1514A . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

29 U.S.C. § 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. § 1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. § 1981a . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

42 U.S.C. § 2000e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

42 U.S.C. § 2000e-2(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

42 U.S.C. § 2000e-5(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

42 U.S.C. § 2000e-5(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Fed. R. Civ. P. 49(b)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 8

Fed. R. Civ. P. 50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Civ. P. 68 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

**State Cases**

Williams v. N.Y. City Hous. Auth., 61 A.D.3d 62 (1st Dep't 2009), lv. denied 13 N.Y.3d 702 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

**State Laws**

N.Y. C.P.L.R. §§ 5001-5004 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

N.Y. Exec. Law § 290 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

N.Y. Exec. Law § 296(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

N.Y. Exec. Law § 296(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

N.Y. Exec. Law § 296(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

N.Y. Exec. Law § 297(10) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

N.Y. Exec. Law § 297(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

N.Y. Lab. Law § 196-d . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

N.Y. Lab. Law § 215 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 18

N.Y. Lab. Law § 215(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**City Administrative Code and Local Laws**

N.Y.C. Admin. Code § 8-101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11

N.Y.C. Admin. Code § 8-107(1)(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

N.Y.C. Admin. Code § 8-107(13) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

N.Y.C. Admin. Code § 8-107(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

N.Y.C. Admin. Code § 8-107(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

N.Y.C. Admin. Code § 8-130 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

N.Y.C. Admin. Code § 8-502(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 10

N.Y.C. Admin. Code § 8-502(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

N.Y.C. Local Law No. 85 (2005), § 1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

N.Y.C. Local Law No. 85 (2005), § 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

**Other Authorities**

Craig Gurian, A Return to Eyes on the Prize: Litigating Under the Restored New York City
Human Rights Law, 33 Fordham Urb. L.J. 255 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Laura Beth Nielsen, Robert L. Nelson, and Ryon Lancaster, Individual Justice or Collective
Legal Mobilization? Employment Discrimination Litigation in the Post Civil Rights United
States, 7 Journal of Empirical Legal Studies 2 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

# PRELIMINARY STATEMENT[1]

Goldberg & Fliegel LLP ("G&F"), attorneys for Plaintiffs, respectfully submits this Memorandum of Law in Support of Plaintiffs' application for attorneys' fees and costs and the award of pre-judgment interest.

The trial in this matter began June 11, 2010 and concluded with jury verdicts in favor of Plaintiffs on June 16, 2010. The jury found that Defendants Antoine Blech and Frederic Lesort violated Plaintiffs' civil rights under the New York State Human Rights Law and the New York City Human Rights Law and, along with Defendant Deep Blue Group LLC ("DB Group"), retaliated against Ba in violation of the New York Labor Law.

Plaintiffs are prevailing parties and are entitled to attorneys' fees and costs pursuant to the applicable statutes in this matter. (Tr. 743-4). These statutes are N.Y.C. Admin. Code § 8-502(f) and N.Y. Lab. Law § 215.[2] Plaintiffs now submit their application for attorneys' fees and costs requesting $216,325.00 in attorneys' fees, with attorneys' fees adjusted upwards by the exercise of the Court's discretion to $237,957.50, and $3,563.53 in costs. Plaintiffs further request that the Court hold Defendants jointly and severally liable for Plaintiffs' attorneys' fees and costs. The Court should grant Plaintiffs' motion. (See Points I through VI).

The Court should also award Plaintiff Ba pre-judgment interest of $877.50 on the back pay award of $3,000 to Ms. Ba under N.Y. Labor Law § 215, reflecting the statutory rate of 9%

---

[1]Citations to "Goldberg Cert." are to the Certification of Kenneth A. Goldberg in support of this motion. Citations to "Abady Decl." and "Nardo Decl." are to the Declarations of Jonathan S. Abady, Esq. and Raymond Nardo, Esq., respectively, in support of this motion. Citations to "Tr." are to pages from the trial transcript in this matter, copies of all cited transcript pages are annexed as Exhibit A to the Goldberg Cert. Copies of verdict forms and other materials cited herein are annexed as exhibits to the Goldberg Cert. References "Docket No." are to the Court's Docket Report of this action, a copy of which is annexed as Exhibit E to the Goldberg Cert.

[2]If the Court grants Plaintiffs' motion for entry of judgment under Fed. R. Civ. P. 49(b)(3)(A) against DB Group on Plaintiffs' sexual harassment and retaliation claims under Title VII, the State HRL and the City HRL, Plaintiffs request that the Court consider Plaintiffs' instant application for attorneys' fees with respect to DB Group under Title VII, the City HRL and the Labor Law. This Memorandum addresses attorneys' fees under Title VII, the City HRL and the Labor Law; the State HRL does not provide for fees. N.Y. Exec. Law § 297(10).

1

for the period March 2007 through June 2010 (3.25 years).  Plaintiffs also request that the Court order that post-judgment interest shall accrue at the same statutory rate on any judgment amount as may remain unsatisfied beginning the date thirty days after entry of judgment.  (See Point VII).

In addition, Plaintiffs request that they be afforded the opportunity to file a reply to any brief by Defendants in opposition to this motion.  Plaintiffs also request leave to submit further application(s) for attorneys' fees and costs incurred in connection with any reply filed in support of Plaintiffs' post-trial motions and in opposition to any post-trial motions filed by Defendants.

## STATEMENT OF FACTS

In 2007, G&F was retained by Plaintiffs Beatriz Veerman and Khadijetou Ba, on a contingency fee basis, to pursue their discrimination, harassment, retaliation and labor law claims against Defendants.  Plaintiffs' counsel drafted, and assisted Plaintiffs in filing, administrative charges of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") and represented Plaintiffs before the EEOC.  Plaintiffs sought a resolution of this matter but a settlement could not be reached.  Defendants vigorously defended Plaintiffs' claims, filing position statements with EEOC.  (Goldberg Cert. ¶¶ 16-17).

Plaintiffs requested and received from the EEOC right to sue letters and in June 2008, Plaintiffs filed a civil lawsuit complaint under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e et seq., the Civil Rights Act of 1866, as amended ("Section 1981"), 42 U.S.C. § 1981 et seq., the New York State Human Rights Law, as amended (the "State HRL"), N.Y. Exec. L. § 290 et seq., the New York City Human Rights Law, as amended (the "City HRL"), N.Y.C. Admin. Code § 8-101 et seq., the wage and hour provisions of the Fair Labor Standards Act of 1938, as amended (the "FLSA"), 29 U.S.C. § 201 et seq., and the wage and hour and the anti-retaliation provisions of the New York State Labor Law (the "Labor Law"), see, e.g., N.Y. Lab. L. §§ 196-d, 215.[3]  (Goldberg Cert. ¶ 18; Docket No. 1).

---

[3]Plaintiffs filed this action jointly under the "permissive joinder" rule.  Fed. R. Civ. P. 20. By doing so, Plaintiffs made this litigation more efficient and reduced the total costs.  Had Plaintiffs filed two separate lawsuits, the time and expense would have been greater to all parties.

At all times during the lawsuit, Defendants vigorously defended Plaintiffs' claims. (Goldberg Cert. ¶ 19).

First, in 2008, Defendants filed a motion to dismiss. The Court ordered that the Defendants' motion to dismiss, as initially filed, be stricken from the docket for failure to comply with the Court's individual practices. (Goldberg Cert. ¶ 20).

Second, the parties conducted extensive discovery necessary to the claims and defenses. Each side produced hundreds of documents. Plaintiffs deposed Defendants Blech and Lesort. Defendants deposed Ms. Veerman and Ms. Ba. All depositions were necessary for the claims and defenses raised by the parties. (Goldberg Cert. ¶ 21).

Third, in 2009, Defendants filed a motion for summary judgment. Plaintiffs opposed the motion and, following briefing and oral argument, in January 2010, the Court denied Defendants' motion in its entirety. (Goldberg Cert. ¶ 22).

In March 2010, the Court calendared the trial for June 14, 2010, with joint proposed jury charges and voir dire due June 7, 2010. (Goldberg Cert. ¶ 23).

In May, 2010, the Court re-scheduled the trial for any time beginning June 7, 2010 subject to conclusion of another case scheduled for trial ahead of Plaintiffs' case. The change required Plaintiffs' counsel to free their schedules for the two weeks beginning June 7 rather than the one week beginning June 14, 2010, as was originally planned. (Goldberg Cert. ¶ 24).

The change in calendar also required counsel to prepare and submit jury charges and motions in limine much earlier than anticipated and on short notice. In accordance with the Court's revised schedule and on short notice, G&F drafted and submitted comprehensive jury charges covering all claims as well as comprehensive proposed verdict forms. (Docket Nos. 54, 63). Defendants' counsel drafted far fewer jury charges that did not cover all claims. (Docket No. 54, compare Part II drafted by Plaintiffs' counsel with Part III drafted by Defendants' counsel). (Goldberg Cert. ¶ 25).

On or about June 9, 2010, the Court notified the parties that the trial would commence on

3

June 11, 2010 at 9:00 a.m.  The trial began June 11, 2010 and Plaintiffs' claims were vigorously defended in all respects.  During the morning of June 11, 2010, the Court heard and decided the parties' respective motions in limine.  Plaintiffs prevailed on the material issues presented by the parties' motions in limine.  The jury was then selected and the parties presented opening statements.  Plaintiffs then called Ms. Ba to testify.  (Goldberg Cert. ¶ 26).

Day Two of the trial was June 14, 2010.  Plaintiff called to testify Mr. Blech, Ms. Veerman, Mr. Lesort, and Maria Jimena Pereyra (Defendants' General Manager).  At the end of the trial day, Plaintiffs rested their case and the Court directed the parties to revise and resubmit concise verdict forms.  Plaintiffs' counsel did so, working into the late evening preparing compressed verdict forms that would adequately address the divergent federal, state and local substantive and personal liability requirements and damages standards that are idiosyncratic to this jurisdiction.  In addition, Plaintiffs' counsel prepared a brief on issues under the City HRL, prepared to argue Defendants' Fed. R. Civ. P. 50 motion, and prepared for closing arguments to be presented on June 15, 2010.  Mr. Goldberg finished his tasks at about 11:30 PM and stayed in a New York City hotel room to be ready for trial the following morning. (Tr. 504, 507-8; Goldberg Cert. ¶ 27).

Day Three of the trial was June 15, 2010.  The Court heard and decided Defendants' Fed. R. Civ. P. 50 motion, upholding Plaintiffs' claims as to discrimination, hostile work environment and retaliation based on sex, misappropriation of gratuities under the Labor Law, retaliation under Section 215 of the Labor Law, and discrimination based on race, color and national origin. (Tr. at 534-36).  Defendants called four witnesses to testify: Mr. Lesort,  Ms. Pereyra, Thadee Zachariesen, and (briefly) Ms. Ba.  Plaintiffs' counsel cross-examined Defendants' witnesses. The parties' counsel gave closing statements, the Court charged the jury, and the jury was sent to deliberate.  (Goldberg Cert. ¶ 28).

Day Four of the trial was June 16, 2010.  The parties attended Court and participated in addressing questions raised by the jury as the jury continued to deliberate.  Ultimately, in the

mid-afternoon of June 16, 2010, the jury found that (1) Lesort had unlawfully sexually harassed/retaliated against Veerman and Blech had unlawfully sexually harassed/retaliated against Ba under the State HRL and the City HRL,[4] (2) Defendants unlawfully retaliated against Ba in violation of the Labor Law; (3) Veerman was entitled to $10,000 in compensatory damages, and $10,000 in punitive damages as against Lesort, on her sexual harassment/retaliation claims; (4) Ba was entitled to $5,000 in punitive damages as against Blech on her sexual harassment/retaliation claims; and (5) Ba was entitled to $3,000 in lost earnings and $24,000 in punitive damages as against DB Group on her Labor Law retaliation claim. The jury awarded an aggregate of $20,000 to Veerman on her civil rights claims and an aggregate of $32,000 to Ba on her civil rights claims and Labor Law claim. The fact that the jury awarded Plaintiffs punitive damages on multiple claims demonstrates that the jury believed that Defendants' wrongdoing was so egregious as to merit such damages. (Goldberg Cert., Exh. B).

This action presented substantial challenges to Plaintiffs' counsel. (Goldberg Cert. ¶ 30).

First, much of the evidence was of the "he-said/she-said" variety and, as the Court acknowledged, many facts were disputed. In total, Plaintiffs called five witnesses to testify at trial: the two Plaintiffs and three witnesses hostile to Plaintiffs–Lesort, Blech and Maria Jimena Pereyra (Defendants' General Manager). Mr. Goldberg's careful preparation for pre-trial depositions, experience in witness examinations and well-planned and executed trial strategy allowed Plaintiffs to impeach Defendants' trial witnesses, including those called to testify by Defendants, and to provide a compelling–and indeed ultimately successful–case to the jury. (Goldberg Cert. ¶ 31). The Court stated that "a lot of evidence [ . . . ] was in conflict" and "[t]he stories were diametrically different." (Tr. 742).

---

[4]In this case, the City HRL provides for strict and vicarious liability of DB Group for the actions of its managers, and the State HRL and Title VII provide for vicarious liability of DB Group for the actions of its managers. Accordingly, Plaintiffs have moved for entry of judgment against DB Group under the City HRL, the State HRL and Title VII. If Plaintiffs' motion for entry is granted, Plaintiffs respectfully request that the Court should consider Plaintiffs' instant application for attorneys' fees under Title VII as well.

Second, the case involved significant legal complexity as a result of the overlapping

statutory bases of the claims. In this jurisdiction, the State HRL and City HRL, as well as Title

VII, provide protection from employment discrimination. However, these statutes have different

standards on certain issues of liability and damages. Compare, e.g., 42 U.S.C. §§ 2000e-2(a),

2000e-5(g), 1981a; N.Y. Exec. Law §§ 296(1)(a), (6), (7), 297(9); N.Y.C. Admin. Code §§ 8-

107(1)(a), (6), (7), (13), 8-502(g). In this case, two of the Defendants were individuals who were

owners, managers, supervisors and employees of a Defendant non-individual employer. (Tr. at

246-47). As a result, preparation of jury charges and verdict forms in this case was complicated

and time-consuming. Plaintiffs' counsel addressed these challenges head-on and, prior to trial,

submitted a comprehensive set of jury instructions covering all claims. (Goldberg Cert. ¶ 32;

Docket No. 54, Section II). Plaintiffs' counsel also drafted and submitted a comprehensive, 55-

page set of verdict forms. (Docket No. 63). On the evening of June 14, 2010, at the Court's

direction, Plaintiffs' counsel compressed in short order the verdict forms to under 10 pages–in a

single evening before a Rule 50 motion, the close of testimony, and summations. (Goldberg

Cert., Exh F).

Notwithstanding these substantial challenges and complexities, Plaintiffs prevailed at

trial. The fact that the jury awarded Plaintiffs punitive damages on multiple claims demonstrates

that the jury believed that Defendants' wrongdoing was so egregious as to merit these types of

damages. After the jury returned its verdicts, the Court complemented counsel, stating:

> I thought the case was very professionally tried. I was impressed with the
> way you interacted with one another. You are all very competent lawyers.
> That was evident to me. It has been my pleasure to be with you for the last
> three or four days [ . . . . ] It [was an] efficient [trial].

(Tr. at 745-46).

At all times during the pendency of the action, Plaintiffs' representation was leanly

staffed. Mr. Goldberg was the primary attorney. He was responsible for and handled preparation

of the pleadings and initial disclosures; drafting and answering interrogatories and document

requests; interviewing witnesses and discussing the case with Plaintiffs; preparing for and

6

conducting the depositions; and preparing and attending to discovery and other motions, conferences, and scheduling and other matters before the Court. (Goldberg Cert., Exh. D). Mr. Goldberg's extensive experience allowed him to do all such work with great efficiency.  Mr. Margolis assisted primarily on pre-trial matters, notably on the motions in limine, verdict forms and jury instructions, "second-chaired" at trial, and assisted in the research and drafting of post-trial motions.  (Goldberg Cert., Exh. D). Messrs. Goldberg and Margolis took great care to avoid duplicative billing and the attorney time listing submitted by Plaintiffs' counsel are conservative and do not reflect all the time actually expended in the representation, because counsel engaged in "billing judgment." Another example of Plaintiffs' counsel's efficiency was Plaintiffs' counsel's successful efforts to have trial exhibits stipulated into evidence, which saved substantial amounts of trial time.  (Tr. 115, 694-7; Goldberg Cert. ¶¶ 34-36).

## ARGUMENT

## POINT I

## STANDARDS FOR AWARDING ATTORNEYS' FEES

### A.    The City HRL, Title VII And Labor Law Provide For Attorneys' Fees

The City HRL, Title VII and the Labor Law all provide for an award of attorneys' fees and costs to a prevailing plaintiff. The City HRL provides: "In any civil action commenced pursuant to this  section, the court, in its discretion, may award the prevailing party costs and reasonable attorney's fees. For the purposes of this subdivision, the term 'prevailing' includes a plaintiff whose commencement of litigation has acted as a catalyst to effect policy change on the part of the defendant, regardless of whether that change has been implemented voluntarily, as a result of a settlement or as a result of a judgment in such plaintiff's favor." N.Y. Admin. Code § 8-502(f).  Title VII reads in pertinent part: "In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e-

7

5(k).[5]  Labor Law § 215 reads in pertinent part: "The court shall have jurisdiction [ . . . ] to order all appropriate relief, including rehiring or reinstatement of the employee to his former position with restoration of seniority, payment of lost compensation, damages, and reasonable attorneys' fees." N.Y. Lab. Law § 215(2).

 A "prevailing party" under Title VII and the City HRL includes one who "succeeds on any significant issue in litigation which achieves some of the benefit the party sought in bringing suit." Bridges v. Eastman Kodak Co., 102 F.3d 56, 58 (2d Cir. 1996). A "prevailing party" need not have succeeded on the primary issue in the case. Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 790-91 (1989).  "Success" is defined as a change in the legal relationship between the parties that materially benefits the plaintiff.  Bridges, 102 F.3d 56, 58.

The prevailing plaintiff is entitled to fees "unless special circumstances would render such an award unjust" in light of the legislative goals underlying enforcement of fee awards in civil rights litigation. See, e.g.,  Lyte v. Sara Lee Corp., 950 F.2d 101, 103 (2d Cir. 1991), citing Hensley v. Eckerhart, 461 U.S. 424, 429 (1983).  Awarding fees and costs to a prevailing plaintiff in civil rights and Labor Law actions is crucial to enabling aggrieved plaintiffs to retain counsel.  See, .e.g., Woodford v. Cmty. Action Agency, 239 F.3d 517, 525 (2d Cir. 2001) (citing Kerr v. Quinn, 692 F.2d 875, 877 (2d Cir. 1982)) ("[t]he function of an award of attorneys' fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel"); Estrella v. P.R. Painting Corp., 596 F. Supp. 2d 723, 727 (E.D.N.Y. 2009) (Spatt, J.) (fee provisions of Labor Law designed in part to secure legal representation for plaintiffs whose grievances were too small, in terms of expected recovery, to create a financial incentive for qualified counsel to take such cases under conventional fee arrangements) (citations omitted).

Here, Plaintiffs are the prevailing parties because they succeeded on significant issues in

---

[5]The discussion herein of Title VII's fee-shifting provision is provided for the Court's reference should the Court grant Plaintiffs' motion for entry of judgment under Fed. R. Civ. P. 49(b)(3)(A) against DB Group on Plaintiffs' civil rights sexual harassment/retaliation claims.

litigation which achieved some of the benefit they sought in bringing suit. <u>Bridges v. Eastman Kodak Co.</u>, 102 F.3d 56, 58 (2d Cir. 1996). (Tr. 743-4).

**B.** **Statutory Attorneys' Fees Under Title VII And The Labor Law Are Awarded According To The *Arbor Hill* "Presumptively Reasonable Fee" Method**

In the Second Circuit, Title VII and Labor Law statutory attorneys' fees are determined by calculating a "presumptively reasonable fee"—what has historically been referred to as the "lodestar" figure — by multiplying a reasonable hourly rate with a reasonable number of hours worked. <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d 182, 190 (2d Cir. 2008); <u>Rios v. Neighborhood Construction Corp.</u>, No. 07 Civ. 8701, 2009 WL 3335354 (S.D.N.Y. Oct. 14, 2009) (Swain, J.) (applying <u>Arbor Hill</u> standard to Labor Law). A "reasonable hourly rate" "includes "<u>all</u> of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness" of attorneys' fees, which may include "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." <u>Arbor Hill</u>, 522 F.3d 182, 190 and n.3 (emphasis in original).

Fee awards need not be proportional to the amount of damages recovered. <u>See, e.g.</u>, <u>Kassim v. City of Schenectady</u>, 415 F.3d 246, 252 (2d Cir. 2005) ("we have repeatedly rejected the notion that a fee may be reduced merely because the fee would be disproportionate to the financial interest at stake in the litigation") (citation omitted); <u>Mng Shu Jin v. Pacific Buffet House, Inc.</u>, No. 06-cv-00579, 2010 WL 2653334 at *5 (E.D.N.Y. June 25, 2010) (Pohorelsky, M.J.) (addressing attorneys' fee award under FLSA and New York Labor Law and stating, "[o]f course, nothing before or since <u>Arbor Hill</u> limits attorneys' fees to the damages amount, or even

9

imposes a proportionality requirement") (citations omitted); <u>see also</u> <u>J.S. Nicol, Inc. v. Peking Handicraft, Inc.</u>, No. 03-civ-1548, 2008 WL 4613752, at n. 27 (S.D.N.Y. Oct. 17, 2008) (Peck, M.J.) ("[c]ourts in this circuit have rejected the proportionality test in other [non-civil rights] statutory fee contexts as well") (citation omitted).

**C.**    <u>**Statutory Attorneys' Fees Under The City HRL Are Awarded More Liberally**</u>

The City HRL statutory attorneys' fee provisions are more liberal than comparable federal and state fee-shifting provisions, and are to be construed in accordance with the statute's uniquely broad and remedial purposes. N.Y.C. Admin. Code § 8-502(f); <u>see also</u> N.Y.C. Admin. Code § 8-130, <u>as amended by</u> N.Y. Local Law No. 85 (2005) (the "Restoration Act"), § 7 (the City HRL "shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed"); Restoration Act, § 1 (comparably-worded federal and state statutes must <u>not</u> be read as "a ceiling above which the local law cannot rise").

The Second Circuit has now clearly stated that under the Restoration Act, the broader City HRL standards apply to cases that are also brought under comparably-worded federal and state statutes.  In its <u>per curiam</u> opinion dated May 2010, the Second Circuit stated, "[t]he New York courts have recently noted that, under the [Restoration Act] , analysis [of the City HRL's provisions] must be targeted to understanding and fulfilling what the statute characterizes as the City HRL's uniquely broad and remedial  purposes, which go beyond those of counterpart State or federal civil rights laws. In short, the text and legislative history represent a desire that the City HRL meld the broadest vision of social justice with the strongest law enforcement deterrent." <u>Spiegel v. Schulmann</u>, 604 F.3d 72, 83 (2d Cir. 2010) (per curiam), <u>citing</u> <u>Williams v. N.Y. City Hous. Auth.</u>, 61 A.D.3d 62, 66-69 (1st Dep't 2009), <u>lv. denied</u> 13 N.Y.3d 702 (2009) and Craig Gurian, <u>A Return to Eyes on the Prize: Litigating Under the Restored New York City Human Rights Law</u>, 33 Fordham Urb. L.J. 255, 262 (2008) (quotations omitted); <u>see also</u> <u>Loeffler v.</u>

10

Staten Island Univ. Hosp., 582 F.3d 268, 278 (2d Cir. 2009) (citing Williams and rejecting parallelism between the City HRL and a comparably-worded federal statute); see also Melie v. EVCI/TCI College Admin., No. 09-2611-cv, 2010 WL 1531325, at *2 (2d Cir. Apr. 19, 2010) (summary order) (citing Loeffler and Restoration Act § 7); McQueen-Starling v. United Health Group, Inc., No. 08 Civ. 4885, 2010 WL 768941, at *6 (S.D.N.Y. Mar. 2, 2010) (Koeltl, J.) (applying Loeffler and citing Williams); Cretella v. Liriano, 633 F. Supp. 2d 54, 70 (S.D.N.Y. 2009) (Swain, J.) (citing Williams).

Simply put, statutory attorneys' fees under the City HRL should be awarded on the broadest basis. Restoration Act §§ 1, 7; N.Y.C. Admin. Code § 8-101; Williams, 61 A.D. 3d 62, 68-9; Spiegel, 604 F.3d 72, 83. This Court should grant Plaintiffs' motion for attorneys' fees and costs and, in doing so, should apply attorneys' fee provision of the City HRL in accordance with the above authorities and the statute's uniquely broad and remedial purposes.

## POINT II

### HOURLY RATES OF AT LEAST $400 PER HOUR FOR MR. GOLDBERG AND AT LEAST $300 PER HOUR FOR MR. MARGOLIS ARE REASONABLE AND SHOULD BE ADJUSTED UPWARD

Plaintiffs request an award of fees based on a base rate of at least $400 per hour for Mr. Goldberg and a base rate at least $300 per hour for Mr. Margolis, with an upward adjustment to rates of $440 and $330 by the Court based on case-specific factors. If the Court awards fees at the base rates of $400 and $300 per hour, the total fee award would be $216,325.00 ($400 x 389.25 hours expended plus $200 x 8 travel hours for Mr. Goldberg and $300 x 194.75 hours expended plus $150 x 4 travel hours for Mr. Margolis).[6] If the Court awards fees at the rate of $440 and $330 based on case-specific factors, the total fee award would be $237,957.50 ($440 x 389.25 hours expended and $220 x 8 travel hours for Mr. Goldberg and $330 x 194.75 hours expended plus $165 x 4 travel hours for Mr. Margolis). (Goldberg Cert. ¶¶ 4, 37-38). As

---

[6] Travel time is compensated at half the hourly rate in this District. Wise v. Kelly, 620 F. Supp. 2d 435, 438 (S.D.N.Y. 2008) (Scheindlin, J.).

11

discussed below, Plaintiffs should be awarded the full amount of attorneys' fees requested because such fees accord with the guidelines of <u>Arbor Hill</u> and applicable law.

Plaintiffs' counsel's base rates of $400 and $300 per hour are reasonable. In determining what rate is reasonable, the Court should rely on both evidence submitted by the parties as to the rates they typically charge and the Court's own knowledge of comparable rates charged by lawyers in the Southern District of New York of reasonably comparable skill, experience and reputation. <u>Mugavero v. Arms Acres, Inc.</u>, No. 03 Civ. 05724, 2010 WL 451045, at *4 and n.4. (S.D.N.Y. Feb. 9, 2010) (Gardephe, J.) (citations omitted).

The actual rate an attorney charges paying clients is "persuasive evidence of reasonableness." <u>Mugavero</u>, 2010 WL 451045, at *5. Mr. Goldberg's customary rate is $400 for employment disputes handled on an hourly basis, G&F has been retained and compensated at such a rate for Mr. Goldberg's services. (Goldberg Cert. ¶¶ 6-9, 11-12, Exh. C). Moreover, in 2008 G&F obtained a U.S. Department of Labor decision providing for reasonable attorneys' fees under the fee-shifting provisions of the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, which provisions are comparable to the fee-shifting provisions applicable to Plaintiffs' instant motion. The amount of such fees was based upon an hourly rate of $400 for both Mr. Goldberg and Mr. Margolis. (Goldberg Cert. ¶ 11). This is persuasive evidence that a rate of at least $400 per hour for Mr. Goldberg and $300 for Margolis is reasonable.

Plaintiffs' fee application is further supported by declarations of experienced and reputable attorneys regarding the prevailing market rates in this District and the reasonableness of the rates requested and hours expended. (Abady Decl.; Nardo Decl.).

Relevant caselaw also supports the rates requested by Plaintiffs' counsel. Mr. Goldberg is an highly-qualified attorney with approximately 20 years of extensive and substantial experience in employment discrimination and wage and hour cases, and his experience, qualifications and credentials are set out in the Goldberg Cert. (Goldberg Cert. ¶¶ 6-9). There are cases reflecting that attorneys in the Southern District of New York with 20 years experience

with skill, experience and reputation comparable to Mr. Goldberg's have been found to charge, and have been awarded, a rate <u>higher</u> than Mr. Goldberg's customary rate of $400 per hour. In 2008, for example, a Southern District court awarded a civil rights attorney with twenty years experience attorneys' fees at a rate $425 per hour. <u>Wise</u>, 620 F. Supp. 2d 435, 446-447. In 2009, a Southern District court awarded attorneys' fees a rate of $525 per hour to Jonathan S. Abady, Esq., a civil rights attorney with 20 years experience. (Abady Decl.); <u>see</u> <u>Vilkhu v. City of N.Y.</u>, No. 06-Civ.-2095, 2009 WL 1851019, at *6, 9 (E.D.N.Y. June 26, 2009) (Sifton, J.), <u>vacated and remanded on other grounds</u>, 2010 WL 1571616 (2d Cir. Apr. 21, 2010) (summary order) (awarding $525 to a 1990 law school graduate with civil rights experience, and noting that "[a] review of precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, and that rates for associates have ranged from $200 to $350, with average awards increasing over time"); <u>see generally</u> <u>Germain v. County of Suffolk</u>, 672 F. Supp. 2d 319, 326 (E.D.N.Y. 2009) (Spatt, J.) (a review of Southern District of New York cases reveals that "hourly rates awarded to civil rights attorneys with significant experience have recently ranged from $425 to $600").

Further, employment litigation attorneys in the Southern District with <u>less</u> experience than Mr. Goldberg have been awarded fees at rates that are the same or higher than Plaintiffs' requested rates. <u>See, e.g.</u>, <u>Heng Chan v. Sung Yue Tung Corp.</u>, No. 03 Civ 6048, 2007 WL 1373118, at *4 (S.D.N.Y. May 8, 2007) (Lynch, J.) (finding <u>four years ago</u> that $400 per hour was a reasonable hourly fee for a civil rights attorney with fifteen years of experience); <u>Raniola v. Bratton</u>, No. 96 Civ. 4482, 2003 WL 1907865, at *6 (S.D.N.Y. Apr. 21, 2003) (Dollinger, M.J.) (finding <u>in 2003</u> the rate of $400 per hour was reasonable for solo and small firm practitioners). The persuasive evidence therefore shows that a rate of $400 per hour for Mr. Goldberg is eminently reasonable.

Jonathan O. Margolis is an experienced and highly-qualified attorney with extensive experience in employment law and his experience, qualifications and credentials are set out in the

Goldberg Cert. (Goldberg Cert. ¶ 10). As noted above, G&F has previously received a decision providing for fees for Mr. Margolis's services at $400 per hour. (Goldberg Cert. ¶ 11). His customary rate is significantly higher than the reasonable rate for his limited (though indispensable) services in this matter, which primarily involved "second-chairing" at trial and research and drafting. Because Mr. Margolis's role was limited, his reasonable rate in this matter is at least $300, analogous to the rates awarded to mid-level associates in this district. Vilkhu, 2009 WL 1851019, at *4 ("[a] review of precedent in the Southern District reveals that [ . . . ] rates for associates have ranged from $200 to $350, with average awards increasing over time" ).

**POINT III**

**PLAINTIFFS' BASE HOURLY RATES MERIT AN UPWARD ADJUSTMENT**

Plaintiffs request that the Court exercise its discretion and adjust upwards the hourly rates by 10% – to $440 for Mr. Goldberg and $330 for Mr. Margolis. The request for upward adjustment is made on the basis of not only the broad and liberal standards of the City HRL but also case-specific factors. Spiegel, 604 F.3d 72, 83 ("the City HRL meld[s] the broadest vision of social justice with the strongest law enforcement deterrent") (citation omitted); Arbor Hill, 522 F.3d 182, 90 (a "reasonable" hourly rate is what a paying client would pay taking into account case-specific variables including those variables set out in Johnson v. Ga. Highway Express, Inc., 488 F.2d 714 (5th Cir.1974), abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 92-93, 96 (1989)). After an upward adjustment, the rates requested are reasonable and accord with rates awarded to attorneys of comparable skill, experience and reputation in this District. See Point II above.

An upward adjustment is merited on the basis of case-specific factors, including the following:

First, the Court may consider this case "undesirable" within the meaning of Arbor Hill and Johnson because of the relatively low amounts of economic damages claimed, the difficulties presented by a case involving many factual disputes and "he-said/she-said" testimony, and the

14

statistically low success rate of employment discrimination claims in general. (Tr. 742); (Exhibit G); see Johnson, 488 F.2d 714, 717-19 (case-specific factors include the amounts involved in the case and "undesirability" of the case); see also Laura Beth Nielsen, Robert L. Nelson, and Ryon Lancaster, Individual Justice or Collective Legal Mobilization? Employment Discrimination Litigation in the Post Civil Rights United States, 7 Journal of Empirical Legal Studies 2, 187 (2010) (analyzing federal court employment discrimination action filings from 1988-2003 and finding "[i]n the 6 percent of filings that result in trial outcomes, plaintiffs win 33 percent of the time, or in 2 percent of filings overall"); see also Woodford, 239 F.3d 517, 525 ("[t]he function of an award of attorneys' fees is to encourage the bringing of meritorious civil rights claims which might otherwise be abandoned because of the financial imperatives surrounding the hiring of competent counsel").

Second, the change in calendar to the case required Plaintiffs' counsel to free their schedules for the two weeks beginning June 7, 2010 rather than the one week beginning June 14 as was originally ordered, and to produce drafts of comprehensive, highly complex jury charges and verdict forms much earlier than anticipated. (Docket No. 54; Docket No. 63). (Goldberg Cert. ¶¶ 31-32); see Johnson, 488 F.2d 714, 717-19 (case-specific factors include the novelty and difficulty of the questions, the level of skill required to perform the legal service properly, the preclusion of employment by the attorney due to the case and the time limitations imposed by the circumstances).

Third, Plaintiffs obtained excellent results, particularly from Mr. Goldberg's use of carefully-planned pre-trial depositions, and carefully-planned trial strategy and use of exhibits, to impeach the trial testimony of Defendants' witnesses. (Goldberg Cert. ¶ 36). Hensley v. Eckerhart, 461 U.S. 424, 435-36 (1983) ("[w]here a plaintiff has obtained excellent results, [her] attorney should recover a fully compensatory fee, [even if] the plaintiff failed to prevail on every contention raised in the lawsuit"); see also Johnson, 488 F.2d 714, 717-19 (case-specific factors include the results obtained).

15

Fourth, the Court itself recognized that "the case was very professionally tried", that the Court "was impressed with the way you interacted with one another", that Plaintiffs' counsel are "very competent lawyers" and that it was the Court's "pleasure to be with you for the last three or four days" (Tr. at 745-46); see Johnson, 488 F.2d 714, 717-19 (case-specific factors include ability of the attorneys).

Fifth, Messrs. Goldberg and Margolis handled the matter extremely efficiently, saving Plaintiffs (and in the event Plaintiffs' application is granted, Defendants) thousands of dollars. Plaintiffs obtained compensatory damages without incurring the substantial expense of expert witnesses on damages. Plaintiffs' counsel conducted the trial without ordering daily transcripts. Plaintiffs deposed only two witnesses although the nature of the case and number of alleged witnesses could have justified additional depositions. Plaintiffs' action was brought jointly under the "permissive joinder" rule, taking into account the interests of efficiency and reduced cost to the parties. See Johnson, 488 F.2d 714, 717-19 (case-specific factors include ability of the attorneys). (Goldberg Cert. ¶ 36); (Tr. at 745-46).

Sixth, G&F represented Plaintiffs on a contingency fee basis and incurred the risk of non-payment as well as the loss of immediate use of proceeds. (Goldberg Cert. ¶ 16). See Johnson, 488 F.2d 714, 717-19 (case-specific factors include whether the fee is fixed or contingent).

Therefore, the Court should exercise its discretion and adjust upwards the requested hourly rates on the basis of the above-listed case-specific factors and the broad and liberal standards of the City HRL. Plaintiffs suggest that the upward adjustment should be 10%, so that Mr. Goldberg's hourly rate be set at $440 and Mr. Margolis's hourly rate be set at $330.

## POINT IV

## THE NUMBER OF HOURS EXPENDED IS REASONABLE

Plaintiffs' counsel expended an aggregate of 584 hours on this matter. (Golberg Cert. ¶¶ 4, 15, 37-38, Exh. D). The number of hours expended by Plaintiffs' counsel on this matter is reasonable. Arbor Hill, 522 F.3d 182, 189-90 (after determining appropriate hourly rates, the

16

Court courts must calculate the reasonable number of hours billed in order to determine the presumptively reasonable fee); (Goldberg Cert., Exh. D; Abady Decl.; Nardo Decl.).

First, Messrs. Goldberg and Margolis took great care to avoid duplicative billing. Mr. Goldberg was the primary attorney on the case and was responsible for handling the pre-trial court appearances, depositions and discovery matters, and client meetings and trial preparation. Mr. Margolis assisted primarily on pre-trial matters, including the motions in limine, verdict forms and jury instructions, "second-chaired" at trial, and assisted in the research and drafting of post-trial motions. Importantly, counsel engaged in "billing judgment" in accordance with Hensley, 461 US 424, 437. (Goldberg Cert. ¶¶ 34-36).

Second, the time spent on jury instructions and verdict forms was necessary and eminently reasonable under applicable caselaw and given the varied and divergent requirements of Title VII, the State HRL and the City HRL to the facts of this case. In Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 541 (S.D.N.Y. 2008) (Francis, M.J.), a law firm much larger than G&F, submitted an attorneys' fee application for 80 hours in connection with its preparation of proposed jury instructions and verdict forms for use in a single-plaintiff hostile work environment and retaliation trial of claims under Title VII, the State HRL, the City HRL and a minor subsidiary claim. The Court approved 68 hours for such work and, notably, the case was settled before trial, the instructions and forms were never used, and the work was performed by a large firm that "presumably would have had a substantial bank of sample jury charges to draw on", with attorneys billing $675 and $375 per hour, respectively, for such work. Id.

Here, Plaintiffs' counsel represented two Plaintiffs; the due date for proposed jury instructions was moved up unanticipatedly from the original due date; Plaintiffs submitted comprehensive jury charges (Docket No. 54 (see Part II therein)) and comprehensive verdict forms (Docket No. 63); during the trial, the Court required a significant compression of the verdict forms, which Plaintiffs' counsel accomplished during the evening of June 14, 2010 during trial; Mr. Margolis, who did most of the work on the jury charges and verdict forms,

17

billed in this case at a much-reduced rate, and Plaintiffs' counsel had to reconcile divergent applicable federal, state and local law in the charges.  (Goldberg Cert. ¶¶ 34-36).  Clearly, the hours expended in this matter by Plaintiffs' counsel are in accordance with <u>Rozell</u> and eminently reasonable.

## POINT V

### PLAINTIFFS' APPLICATION FOR COSTS IS MODEST AND MERITORIOUS

Plaintiffs seek costs of $3,563.53, comprised of (1) $350 for filing fees; (2) $1,903.70 for deposition transcripts for Blech and Lesort; (3) $637.53 for copying expenses; and (4) $672.30 for trial transcripts. Plaintiffs' application is modest and meritorious. The Court should award all such costs.  (Goldberg Cert. ¶¶ 39, Exh. H).

## POINT VI

### DEFENDANTS SHOULD BE HELD JOINTLY AND SEVERALLY LIABLE FOR PLAINTIFFS' ATTORNEYS' FEES AND COSTS

The Court should hold Defendants jointly and severally liable for attorneys' fees and costs.  <u>See</u> <u>Koster v. Perales</u>, 903 F.2d 131, 139 (2d Cir. 1990) ("there is no rule in this circuit that requires" apportionment); <u>Spiegel</u>, 604 F.3d 72, 83 ("the City HRL meld[s] the broadest vision of social justice with the strongest law enforcement deterrent") (citation omitted); <u>see also</u> <u>Turner v. D.C. Bd. of Elections and Ethics</u>, 354 F.3d 890, 898 (D.C. Cir. 2004) ("courts have upheld the imposition of joint and several liability for a fee award where there existed a question as to whether the fee would be collectible from one of the defendants").

## POINT VII

### THE COURT SHOULD AWARD PLAINTIFFS PRE-JUDGMENT INTEREST

The Court should award Plaintiff Ba pre-judgment interest of $877.50 on back pay award of $3,000 to Ms. Ba under N.Y. Labor Law § 215, reflecting the statutory rate of 9% for the period March 2007 through June 2010 (3.25 years).  (Goldberg Cert. ¶ 40).  Plaintiffs also request that the Court order that post-judgment interest shall accrue at the same statutory rate on any judgment amount as may remain unsatisfied beginning as of the date that is thirty days after

entry of judgment. N.Y. C.P.L.R. §§ 5001-5004.

## <u>CONCLUSION</u>

The Court should grant Plaintiffs' motion in its entirety. Plaintiffs request an award of attorneys' fees and costs incurred in connection with the making of this motion. Plaintiffs request that they be afforded the opportunity to file a reply to any brief by Defendants in opposition to this motion. Plaintiffs also request leave to submit further application(s) for attorneys' fees and costs incurred in connection with any reply filed in support of Plaintiffs' post-trial motions and in opposition to any post-trial motions filed by Defendants.

Dated: July 23, 2010
     New York, New York

                         GOLDBERG & FLIEGEL LLP

               By:    /s/ Kenneth A. Goldberg
                     Kenneth A. Goldberg(KG0295)
                     Goldberg & Fliegel LLP
                     60 East 42nd Street, Suite 3421
                     New York, NY 10165
                     (212) 983-1077

                     Attorneys for Plaintiffs